SULLIVAN *v.* GODKIN.

1. EVIDENCE—LOGS AND LOGGING—MEASUREMENTS—ESTIMATES.

Where plaintiff's case, based on a trespass to lands and removal of timber, depended upon proof as to the value and quantity of timber cut by defendant, and one of the witnesses secured by plaintiff to estimate the amount of timber so removed had died after making the measurements and before trial, a book showing the detailed figures of such estimate, identified by the other witness who had assisted in making it, was admissible in evidence after being fully proved, the witness identifying the handwriting of the deceased and testifying to the correctness of the measurements.

2. APPEAL AND ERROR—NEW TRIAL—EXHIBITS, LOSS OF—STIPULATIONS.

Plaintiff's attorney, having charge of three books offered in evidence in the trial court in which plaintiff secured a judgment, became seriously ill and was unable to give any information or aid to find them. The record showed that on the trial defendant's attorney objected to the production of these exhibits on the ground that they contained numerous erasures and alterations tending to impeach the correctness of the entries; also that the parties had stipulated when preparing the record on appeal that the books should be produced by plaintiff's attorney in the Supreme Court, and filed with the clerk or delivered to defendant's attorney, stating that the exhibits would not be copied so as to show their appearance, and an examination thereof was necessary to an understanding of the points raised. The books having become mislaid or lost, plaintiff failed to comply with the stipulation, without bad faith or fraud on the part of his attorneys. *Held,* that the proper remedy was not the dismissal of the writ of error, but the granting of a new trial.

Error to Bay; Searl, J., presiding. Submitted June 18, 1912. (Docket No. 11.) Decided October 2, 1912.

Trover by Thomas G. Sullivan against John Godkin for the wrongful cutting and conversion of certain tim-

172 MICH.—17.

ber. Judgment for plaintiff. Defendant brings error. Remanded for new trial.

*Frank S. Pratt*, for appellant.

*Davitt & Davitt (Weadock & Weadock.* of counsel), for appellee.

STEERE, J.   This is an action in trover, brought to recover the value of certain white pine and Norway logs, alleged to have been unlawfully cut and taken by defendant from certain lands located in town 41 north, of range 13 west, Schoolcraft county, Mich., near which defendant owned a sawmill and was engaged in lumbering operations.

Defendant being a resident of Bay City, Mich., this action was commenced and tried in the circuit court of Bay county, resulting in a verdict and judgment in favor of plaintiff for $1,300.

It appears that on September 13, 1890, defendant purchased from one Henry Gamble the white pine and Norway timber standing, lying, and being on certain lands in Schoolcraft county available for his mill, amongst which were the descriptions from which it is claimed the logs in question were taken.   By the contract of purchase, the defendant had 10 years, until September 13, 1900, in which to cut and remove the same.   Gamble subsequently made disposition of these lands by proceedings giving rise to various entanglements, of which the details are unimportant here.   On December 31, 1902, he executed a confirmatory instrument, by which he assigned to plaintiff all rights of action and all interest in timber growing out of Gamble's ownership of said lands, reciting in the latter conveyance that plaintiff had theretofore acquired all Gamble's right, title, and interest in said lands, that it was then the intention that he should not only acquire the land and timber thereon, but any timber cut therefrom, and any right of action Gamble had for trespass committed thereon; said assignment, or conveyance, of

December 31, 1902, being made in confirmation thereof, and "to convey to said Sullivan any and all my right, title, and interest (if any there be) in or to any of said timber, and all right of action which I may have for trespasses committed on said lands or any part thereof."

As the case appears from the record to have developed on the trial, the most serious matters in controversy were: How much timber, if any, was cut from said lands subsequent to September 13, 1900, the value of timber claimed to have been cut and removed after said date, defendant's claim that the time in which he could cut and remove the same had been extended, estoppel of plaintiff, and the good faith of defendant. Much testimony was introduced on these various subjects, with many objections made and exceptions taken.

In order to recover, it was imperative for plaintiff to not only prove the trespass, but also the amount and value of the logs cut and taken after September 13, 1900, at which time, according to the terms of defendant's contract of purchase, the right to cut and remove expired.

Three witnesses, who were in the employ of defendant while he was lumbering the tract, gave testimony tending to show that the work was continued after the date when the time limit had expired, and that the logs were cut, banked, and taken to defendant's mill from certain descriptions after said September 13, 1900. The logs so taken if any, were manufactured into lumber by defendant, and, when plaintiff sought to ascertain the trespass, were unavailable for measurement. A so-called "stump measurement" for trespass, on the descriptions claimed to have been lumbered after the contract expired, was made, in 1902, for plaintiff by two experienced men named Brown and Blair. Brown had worked as foreman on the lands for defendant; was familiar with the descriptions and conditions. They proceeded to examine, count, make measurements, and ascertain the quantity and kind of logs taken, according to the usual methods of lumbermen in estimating trespass. A record of their work was made,

as it progressed, in small tally books carried with them for that purpose. The entries were made by Blair, whose testimony was not available; he having been killed after the trespass was estimated and before the trial. The tally books, three in number, were produced, and Brown, the only living witness having knowledge of the measurements and manner of estimating the trespass and making the entries in the books, testified in relation thereto. Brown had been a lumberman and landlooker for 30 years, and his competency was not questioned. He gave evidence identifying the lands as those from which the timber in controversy was cut and removed, and stated the time when certain of such work was done, told of going with Blair upon the various descriptions and estimating the trespass, and identified the books produced as the ones used by them in that work. He testified, in part, as follows:

"We measured with a tape line and rule. We measured from the stumps to the top were it was cut off. We measured the butts where they where cut off—the stumps, certainly. There was a memorandum made of the measurements. They were all put down in a book. I had one end of the tape line, and he had the other; and when I would halloo out how many feet, he would put down and halloo back how many feet; that is, the amount he put down in the book. I saw him make some figures, but did not see him make them all. I saw him make a good many. * * * The pages in the book are all just the same. They are all Blair's; that is, the first three columns. * * * This is where he had the white pine, and then he had Norway. * * * These words were written at the same time as the memorandum made by Mr. Blair in the woods, all except the fourth column of figures. * * * Yes, sir; I was there and saw him make them myself. * * * I was at one end of the tree and Blair at the other when we measured the length. Blair had the book. I didn't go toward him to see if he put down the figures every time."

The method of measuring followed by them was similar to that described in *Seligman* v. *Ten Eyck*, 60 Mich. 267 (27 N. W. 514), in relation to which this court said:

" We think the evidence of scaling was not incompetent. From the nature of the business, it cannot always be possible to show more than was shown here. *Smith* v. *Kelly*, 43 Mich. 390 (5 N. W. 437)."

When the three tally books were first offered in evidence, many objections were interposed and argued. One column of figures, the fourth on the various pages, was not in Blair's handwriting, but was made by plaintiff in computing the board measure from the butts, tops, and length of the trees shown in the tally columns made by Blair. Among other objections, it was urged that only on the top of one page was there anything in Blair's handwriting to show where the timber represented in succeeding pages was taken from; " that the original descriptions testified by Mr. Brown to be in Mr. Blair's handwriting, and every one of them, has been changed, and the descriptions show erasures, and there is not apparently a description originally written there;" also " that it appears the measurements were not made in the usual course of business at the time of lumbering, but were made for the purpose of testifying in this litigation, and there is no presumption in favor of the correctness of the entries made by Blair, now said to be deceased." A reoffer of the books was finally made, limited to the pages marked by the stenographer as identified. They were admitted in evidence against renewal of the objections previously interposed, and the further objection that " Book 3 " was so mixed up that, without·describing the subdivisions and erasures, it was wholly incompetent.

Counsel for defendant urges that the books were not properly proven and were incompetent as evidence, under the decision of this court in *Sovereign* v. *Mosher*, 86 Mich. 36 (48 N. W. 611). In that case a witness named Reynolds testified to scaling certain logs in company with a man named O'Malley; each standing at a separate end of a skidway, making measurements and estimates of quality. O'Malley would call off measurements and defects from his end of the pile, and Reynolds would note

this, and then make measurements and observe defects at his end.    The court there said:

"O'Malley was not produced as a witness, nor any reason given for his absence.    The scale of Reynolds, under these circumstances, was incompetent.    It was the duty of plaintiff to produce O'Malley as a witness, if it were in his power to do so."

In that case plaintiff had violated the elementary principle that the best and most direct testimony must always be produced; and where, for any reason, that becomes impossible, such fact must be shown, before other evidence is admissible.    In this case it was shown that Blair was deceased, and his testimony not available.    We do not think the authority cited controlling here.

It is stated that these tally books could not be found when the bill of exceptions in this case was settled.    The printed record contains the following stipulation:

"These three books, marked as Exhibits A, B, and C, by the stenographer taking Mr. Brown's deposition, are referred to in this record as 'Book 1,' 'Book 2,' and 'Book 3.'    And, inasmuch as a copy of the same cannot be made, so as to show the appearance of the books, and the copy attached to the bill of exceptions, and an examination of the original books being necessary to an understanding of the points raised, it is therefore stipulated and agreed that the original books shall be filed with the clerk of the Supreme Court, or delivered to the attorney for defendant, on or before August 15, 1911, and that such original books shall be used upon the hearing in the Supreme Court as constituting a part of this bill of exceptions and the record of this case."

Counsel who represented plaintiff in this court were unable to submit said books to court and counsel at the hearing, or before, and they have not since been produced pursuant to the foregoing stipulation.    It is admitted that there is an entire absence of evidence of any intentional suppression of them; the unfortunate circumstance being that counsel who originally had charge of and tried the case for plaintiff has since been unable, from serious ill-

ness, to give any aid or information in that connection, so that neither he, plaintiff, nor present counsel are blameable for the nonproduction of the books.

The fact remains, however, that the record is deficient in that important particular. This court does not have the benefit of a personal examination of the books themselves, or of even a copy. Strenuous objections were made against them in the court below, and are urged here, on the ground of unexplained erasures and "suspicious alterations" manifest on inspection; and it was stipulated that an examination of the original books was necessary to an understanding of the points raised. Such being the case, it follows that defendant's objections to their admission, based upon alleged erasures and alterations, cannot be understandingly heard in this court upon the facts as they were presented in the trial court.

Since the case was removed here by writ of error, a motion has been heretofore made by defendant in relation to these exhibits, asking this court to intervene and order plaintiff to either serve the same on counsel for defendant, or file them with the clerk of this court within a certain time, and in default thereof that the judgment of the court below be reversed. The motion was not granted, but it was held that it should be treated, at the option of the appellant, as an application to remit the record, to enable either party to apply to the trial judge for such amendment to the bill of exceptions as might throw further light upon the contents of said exhibits; further consideration of the legal questions involved being deferred until final hearing. *Sullivan* v. *Godkin*, 167 Mich. 663 (133 N. W. 481).

The situation is manifestly such at the present time that the usual course of remanding the record to the court below, for additions or corrections, is futile. Conceding that no culpability in fact for the nonproduction of the exhibits attaches to any one, this court nevertheless cannot look behind the record. Taking it as presented, we find therein a stipulation that an examination of the original

books is necessary to an understanding of the points raised; that these exhibits (which were the only definite evidence of the amount of timber involved in the alleged trespass) were to be filed with the clerk of this court, or delivered to defendant's attorney, on or before August 15, 1911, to be used on the hearing of this case. The provisions of the stipulation have not been complied with. They were plaintiff's exhibits. Defendant is entitled to their production. Their absence prevents him from presenting, as he has the right to, what he claims is a serious and vital question, and in relation to which this court does not have before it that which, according to the stipulation, is necessary to an understanding of the points raised.

We think, as between the two, plaintiff must be held responsible for the admittedly imperfect record in this court, to the extent of entitling defendant, as the only course which the peculiar circumstances justify, to a new trial.

The judgment is therefore set aside and a new trial granted, without costs to either party.

MOORE, C. J., and MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.