PAUL *v.* UNIVERSITY MOTOR SALES CO.

LINCOLN *v.* SAME.

1. PLEADING—AFFIRMATIVE DEFENSES—DISCHARGE.

Discharge is an affirmative defense and the facts constituting such defense, as well as any other defense which by affirmative matter seeks to avoid the legal effect of, or defeat, the cause of action set forth in the declaration and any ground which if not raised on the pleading would be likely to take the opposite party by surprise, must be plainly set forth in the answer (Court Rule No. 23, § 3 [1933]).

2. SAME—ADMISSIBILITY OF EVIDENCE.

Contract of sale of corporate automobile sales agency, referred to in plaintiffs' declaration in action against corporation to recover loans advanced to the company and for past due salaries accruing prior to such contract, *held,* admissible in evidence whether offered by plaintiffs or defendant notwithstanding defendant's answer was, in effect, a simple denial of each of plaintiffs' allegations upon which liability was predicated.

3. TRIAL—OBJECTION TO EVIDENCE.

The particular reason for objection to the introduction of evidence must be reasonably apparent; the proper method being to state briefly the grounds thereof.

4. PLEADING—VARIANCE—SPECIFIC OBJECTION — SURPRISE — AMENDMENT.

Variance between pleadings and proof which could have been cured by amendment and which, under the circumstances and in view of lack of specific objection, presumably did not occasion surprise to opposing counsel will be regarded on appeal as having been cured by amendment.

5. SAME—EVIDENCE—UNPLEADED DEFENSES—DISCHARGE.

In actions by two plaintiffs who had been officers and owners of controlling interest in defendant corporation to recover loans to corporation and past due salaries accruing prior to execution of contract of sale of their interests to individuals not defendants herein, admission in evidence of such contract and inventory of its assets referred to therein *held*, not error, where contract was referred to in plaintiffs' declarations, even though plaintiffs claimed contract and inventory were sought to be used in support of unpleaded defense of discharge.

6. EVIDENCE—BEST EVIDENCE—VARYING TERMS OF WRITTEN CONTRACT.

Exclusion of testimony, offered by plaintiffs in their action to recover loans made to defendant, a corporation, and unpaid salaries which accrued prior to the sale of their interests therein to individuals, not defendants, pursuant to a contract that referred to an inventory and appraisal which had been prepared by a certified public accountant, a copy of which was introduced by defendants that had omitted plaintiffs' claims as liabilities, that there was another and different inventory and appraisal on sheets of a different size which the same accountant had prepared and which included their claims *held*, proper, since witness could not testify as to contents of unambiguous written instrument, no subpœna was served upon alleged maker to bring in such claimed inventory in order to present best evidence and accountant testified exhibit introduced was the only one presented to parties as a basis for negotiating their deal and no questions were asked him concerning such claimed inventory.

7. SAME—PAROL EVIDENCE—UNAMBIGUOUS INSTRUMENT.

Parol evidence cannot be resorted to to add to, vary, contradict, or change the legal effect of the language of a written instrument unambiguous on its face.

8. SAME—PAROL EVIDENCE.

The contents of a written instrument cannot be proved by parol unless the instrument itself is produced or its absence accounted for.

9. SAME—BEST EVIDENCE.

It must be shown that it is impossible to produce the best and most direct testimony before other evidence is admissible.

10. SAME—SECONDARY EVIDENCE.

Secondary evidence is not admissible without proof that the original is lost or otherwise beyond the power of the party to produce it.

11. CORPORATIONS—OBSERVANCE OF CORPORATE FICTION.

A corporation will generally be looked upon as a legal entity until sufficient reason to the contrary appear but when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, defend crime, or in support of an end subversive of the policy of the courts, the law will regard the corporation as an association of persons.

12. SAME—DISREGARD OF CORPORATE FICTION—CONTRACTS—INTENT —ESTOPPEL.

In order to carry out the intention of parties to a contract of purchase of corporate automobile sales agency, fiction that corporate existence of defendant company was distinct from that of its stockholders is disregarded where so-called ''complete inventory and appraisal,'' referred to in contract and pursuant to which it was drawn, omitted reference to plaintiffs' claims for loans to the corporation and past due salary, hence plaintiffs are estopped to deny their claims against the corporation had been discharged where purchasers assumed only such corporate liabilities as were enumerated in the inventory and appraisal.

13. ESTOPPEL—CONTRACTS—FRAUD—MISTAKE.

If, in making a contract, the parties agree upon or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact so long as the contract stands, in the absence of fraud or mistake.

14. CONTRACTS—ESTOPPEL TO DENY PREVIOUS ARRANGEMENTS.

Although a party to a contract had objections to it, yet having executed it, his mouth is closed against any denial that it superseded all previous arrangements.

Appeal from Wayne; Merriam (De Witt H.), J. Submitted January 7, 1938. (Docket Nos. 67, 68, Calendar Nos. 39,700, 39,701.) Decided April 4, 1938.

Separate actions by Riney F. Paul and Albert B. Lincoln against University Motor Sales Company, a

Michigan corporation, for sums due on promissory notes, for salary and on loans. Cases consolidated for trial and appeal. Disagreement of jury. Directed verdict and judgment for defendant. Plaintiffs appeal. Affirmed.

*Charles A. Lorenzo,* for plaintiffs.

*Louis J. Colombo,* for defendant.

McAllister, J. On May 12, 1934, Riney F. Paul, Albert B. Lincoln and Walter Hammond incorporated the Paul-Hammond Company. Each of the incorporators owned one-third of the stock. In November, 1934, Hammond's stock interests in the corporation were purchased by plaintiffs and the name of the corporation was changed to the University Motor Sales Company. Plaintiffs Paul and Lincoln were the sole stockholders, officers and directors of the company. They managed and controlled the business of the corporation until March 7, 1935, having resigned about a week previous to this date as agency representatives of the Ford Motor Company.

During the latter part of 1934, William Heston mentioned to the officials of the Ford Motor Company that he would like to have such an agency if he could find a partner. Several months later he was called upon by a representative of the company and was shown the resignation of plaintiffs as dealers and was told that the agency was available. On this occasion he met for the first time Dawson, who also was interested in such an agency.

The University Motor Sales Company at this time was in serious financial straits. Heston and Dawson went over to the company's place of business and discussed the question of assets and liabilities. A representative of the Ford company, who was help-

ing along the negotiations, called in Ralph Genter, a certified public accountant, to audit the books of the company and to make a complete inventory and appraisal of all its assets and liabilities. In the examination of the affairs of the company, Mr. Genter ascertained that the plaintiffs had claims against the corporation for loans and past due salary.

The testimony is conflicting as to exactly what the conversation was between plaintiffs and Heston, Dawson and Genter with regard to these alleged liabilities. However, Genter prepared a statement showing the assets, liabilities and capital adjustments and presented copies of this statement, which were designated on the trial as a "complete inventory and appraisal," to both of the plaintiffs, and to Heston and Dawson as prospective purchasers. This statement, prepared by the auditor, included the assets and liabilities. All claims, however, of plaintiffs for loans advanced to the company and past due salaries were left out of the statement and did not appear as liabilities.

In the analysis of capital adjustment which was also submitted to the parties, it appeared that the accounts and loans payable as claimed by plaintiffs were omitted from the liabilities as set forth in the balance sheet. After they had examined the auditor's statement, a contract was prepared and executed by plaintiffs Paul and Lincoln, and Heston and Dawson, in which Heston and Dawson purchased all of the corporate stock of the company from plaintiffs, who were sole owners, and received an assignment of all of the assets of the University Motor Sales Company. The contract further set forth "first parties (Heston and Dawson) acknowledge receipt of a complete inventory and appraisal of the stock, fixtures, accounts receivable and payable,

tools,. equipment, and other personal property of said company as of February 28, 1935, and that they have acquainted themselves with the transactions and business done by it from them to this date.''

Heston and Dawson also acknowledged that the said business of University Motor Sales Company had sundry liabilities and obligations which they were to liquidate as successor stockholders and officers of the company, and they further assumed and agreed to discharge ''such liabilities each and/or both of the parties of the second part (plaintiffs herein) is/are and/or may be subject to by reason of his/their having been stockholders and/or officers of said company whether such arise by statute or otherwise.''

After the execution of the contract and the consummation of the sale, plaintiffs brought these actions to recover from the corporation the amount of the loans and past due salary accounts which had been omitted from the statement of liabilities prepared by the auditor prior to the sale. The defendant corporation claims that all of such salary accounts and loans were cancelled and discharged by plaintiffs at the time of their sale of the entire corporate stock and the sale of the entire assets of the company.

Separate actions were brought by Paul and Lincoln, which were consolidated for trial and appeal. On the trial a motion for directed verdict was made on behalf of defendant which was taken under advisement by the court in accordance with the Empson act (3 Comp. Laws 1929, § 14531 *et seq.*) and the case was submitted to the jury. Upon failure of the jury to agree upon a verdict, it was discharged and the court, under the right reserved on motion, entered judgments of no cause of action.

At the outset of their appeal, plaintiffs argue that the trial court erred in admitting in evidence the contract whereby plaintiffs sold their stock to Heston and Dawson, and the so-called inventory and appraisal, designated as exhibit 16, upon which defendant bases its claim that plaintiffs therein discharged the defendant from any liability on their loans and salary accounts.

Discharge is an affirmative defense and the facts constituting such defense, as well as any other defense which by affirmative matter seeks to avoid the legal effect of, or defeat, the cause of action set forth in the plaintiffs' declarations, and any ground which if not raised on the pleading would be likely to take the opposite party by surprise, must be plainly set forth in the defendant's answer. Court Rule No. 23, § 3 (1933).

In this case, defendant's answer was, in effect, a simple denial of each of the plaintiffs' allegations upon which liability was predicated. When defendant offered the contract in evidence, plaintiffs objected on the ground that it was "incompetent, irrelevant and immaterial, not set forth in the pleadings, no notice." Plaintiffs, themselves, however, set forth in their declarations the sale of all of their stock to Heston and Dawson, "who thereupon became the sole stockholders, directors, and officers of defendant company" on "to-wit: March 8, 1935." This allegation of the declarations obviously referred to the contract dated March 7, 1935. Such contract, under these circumstances and under the allegations in the declarations, would be admissible on the trial of the case, whether offered by plaintiff or defendant.

The inventory and appraisal, exhibit 16, was introduced on the theory that it was included by refer-

ence in the contract entered into between the parties. Plaintiffs' objection to the introduction of this in- strument was that it was "irrelevant, incompetent and immaterial." Plaintiffs' real ground of objec- tion to the admission of these instruments now ap- pears to be that they constitute an affirmative de- fense, and that the defendant seeks to prove a dis- charge of plaintiffs' claims by setting up the terms of the contract in question and its legal effect; and that therefore there was a variance between defend- ant's pleadings and proofs permissible under them.

In objecting to the introduction of evidence, the particular reason for objection must be reasonably apparent, *Isaacs* v. *McLean,* 106 Mich. 79; and the proper method of objection is to state briefly the' grounds thereof. *Welch* v. *Palmer,* 85 Mich. 310.

If the objection had been made, however, that de- fendant was relying, by virtue of these instruments, upon an affirmative defense, which had not been pleaded in conformity to the court rules, the trial court undoubtedly would have permitted an amend- ment to the plea in order to set forth such defense. The contract in question had been drafted by plain- tiffs' counsel and presumably did not occasion sur- prise; but it was within the discretion of the court to continue the cause over, if plaintiffs were unpre- pared for such defense. No surprise was claimed, however, and no request for continuance made; and in view of plaintiffs' allegations and the lack of spe- cific objection, any variance between defendant's pleadings and proof was one that could be cured by amendment; and it will now be regarded as amended in accordance with the rule laid down in *Hallock* v. *Income Guaranty Co.,* 270 Mich. 448, and *Scendar* v. *Winona Copper Co.,* 169 Mich. 665.

It is not apparent that there was any error, there- fore, on the part of the trial court, in considering the

contract and inventory as properly a part of the evidence before it in the determination of the case.

It is the contention of plaintiffs that the so-called inventory and appraisal introduced in evidence on the trial and referred to in the contract of sale, is not the same inventory and appraisal as that relied upon by plaintiffs at the time of the execution of the contract.  They claim that there was another and different inventory and appraisal consisting of a number of yellow sheets of paper which the auditor, Genter, prepared and that it is such latter inventory and appraisal to which the contract refers.  Because of this claim they insist that they had a right to testify as to the inventory and appraisal upon which they relied; and which they claim was incorporated in the contract of sale; and that the trial court was in error in excluding such testimony.  The decision of the trial judge was based upon the fact that such testimony varied the terms of a written contract and that because exhibit 16, the inventory and appraisal, was in writing and incorporated in the contract by reference, testimony of plaintiffs as to another inventory and appraisal, or facts set forth therein, was in violation of the parol evidence rule.

Defendant's counsel insists that if the inventory and appraisal introduced in evidence as exhibit 16 is a part of the contract, then plaintiffs have no claim, inasmuch as such statement omitted the claims of plaintiffs; and that in entering into such a sale of stock and assets based upon such statement, plaintiffs thereby cancelled and discharged their claims.

On the trial of the case the inventory and appraisal setting forth assets and liabilities was introduced in evidence by defendant's counsel.  Heston and Dawson testified it was the only inventory and appraisal submitted to them or discussed by the parties.  Plaintiff Lincoln testified that he did not dispute the

figures of the auditor at the time he presented the audit; that he acknowledged it; that they were trying to agree on some figures and plaintiffs had to take what was offered to them; that the prospective sale was not discussed until after the statement was made up; that they did not discuss the liabilities nor the assets to any great extent. He stated: "Each one of us was handed by the auditor a balance sheet showing exactly what all our assets were and what our liabilities were. And this statement included all the liabilities which Dawson and Mr. Heston agreed to assume. And those which we agreed to assume."

He further testified:

"*Q.* In other words, each one of you was presented with that balance sheet?

"*A.* Yes.

"*Q.* So you could see exactly what the corporation owed and what you possessed?

"*A.* We were presented with this. * * *

"*Q.* The point is were you shown and did you examine that sheet?

"*A.* Yes, I was shown that sheet.

"*Q.* This schedule which showed all the liabilities and assets of the corporation before this deal was consummated?

"*A.* Yes, sir, I was."

The schedule which the witness referred to in his testimony was later introduced in evidence as exhibit 16.

Plaintiff Paul, upon being shown exhibit 16, testified:

"Here is your balance sheet, the same figures, and an analysis of the capitalization, the same thing, it is exactly the same. This is the one I received. I did receive an exact copy of exhibit 16, an inventory and appraisal of stock and equipment. And notes

receivable and payable and so forth. I examined that inventory and appraisal before I signed this agreement. * * * This is the only inventory that I know of. That was in typewritten form, other than what they went around and checked on personally.''

Subsequent to this testimony, during an interchange of comment between counsel, the trial judge attempted to clear up certain difficulties and said:

''*The Court:* Let's get at this question a little differently. When your clients signed that agreement, whether before supper or after supper that evening in question, didn't they sign that and accept that inventory? I am not asking you whether or not * * * they were forced to, but didn't they sign it?

''*Mr. Lorenzo* (counsel for plaintiffs): I think in this instance, they did.

''*The Court:* Then they are bound by it.''

The court thereupon recessed and plaintiff Paul resumed the stand at the afternoon session. He then directly contradicted himself in his previous testimony. He testified:

''Exhibit 16, this group of papers, is not the inventory and appraisal. The appearance of that inventory and appraisal referred to by this exhibit was made out on yellow paper, similar to what you have there, somewhat longer. The auditor had it. Similar paper in color, but they were longer sheets, I believe. * * * We were not given a copy of that inventory and appraisal. We were not given an opportunity to examine it in detail. We could see from time to time as they were working on it that they were getting up a complete list of all stock, our parts and machinery, and tools, and also a complete list of all our book accounts. * * *

''*Q.* Did you see the inventory and appraisal which you speak of now sufficiently and generally enough to know whether or not there were accounts

receivable, accounts payable, and all liabilities of the corporation in detail?

"*Mr. Colombo:* I object to that question unless the inventory and appraisal itself is produced, and that is the best evidence of what it contains.

"*The Court:* I am going to sustain that objection."

Plaintiff Paul further testified:

"I am sufficiently acquainted with bookkeeping to know what an inventory is. There is nothing about this exhibit 16, the first sheet of which is designated as the balance sheet, assets, there is nothing about that that I can classify as being an inventory. They are just lump figures there. * * * There is nothing about that exhibit that could be designated as an appraisal."

In this testimony the witness contradicted practically all of his testimony of the morning. He further testified that this alleged statement, consisting of yellow sheets, was prepared for the purpose of the transaction and was left in possession of Mr. Genter, the auditor, whom he referred to as sitting right there in the court room.

Counsel for plaintiffs made vigorous efforts to elicit from the witness testimony that he referred to the so-called inventory of yellow sheets rather than exhibit 16 at the time of executing the contract of sale. But the court sustained objections to such testimony on the ground that he could not testify as to the contents of a written instrument; that plaintiffs should subpœna the person who made the inventory in order to have such papers brought before the court as the best evidence. Ralph Genter, the auditor, was sworn as a witness and testified that he was the party who had prepared the statement and that he had furnished no other inventory or appraisal

other than that of exhibit 16; that no inventory was presented to any of the parties except such exhibit, in which the loans and accounts claimed by plaintiffs to be due them, were eliminated.

It impresses us as significant that although plaintiffs referred to Genter as the auditor who had prepared the inventory which they claimed was different from exhibit 16, and which was alleged to be written on yellow sheets of paper, no request was made by counsel for defendant to have him produce such inventory, and no questions were asked of him regarding such alleged inventory or his preparation thereof. Genter's statement that exhibit 16 was the only inventory which he prepared and submitted to the parties was not challenged by plaintiffs' counsel during the course of his examination. Under these facts and circumstances, the court properly ruled that any testimony regarding such alleged inventory was in violation of the parol evidence rule, and varied the terms of the written contract executed by the parties which included by reference the inventory and appraisal designated as exhibit 16. "Parol evidence cannot be resorted to to add to, vary or contradict the language of a written instrument unambiguous on its face." *Gardner* v. *City National Bank & Trust Co.,* 267 Mich. 270. The legal effect of a written instrument complete in itself and unambiguous in its terms, cannot be changed by parol evidence. *Jones* v. *Phelps,* 5 Mich. 218; *Dunham* v. *W. Steele Packing & Provision Co.,* 100 Mich. 75.

If plaintiffs relied upon the alleged inventory which, they claim, consisted of yellow sheets of paper, they could have subpœnaed before the court the party in whose possession such inventory was last known to have been. The contents of a written instrument cannot be proved by parol unless the in-

strument itself is produced or its absence accounted for. It must be shown that it is impossible to produce the best and most direct testimony before other evidence is admissible. *Sullivan* v. *Godkin,* 172 Mich. 257. Secondary evidence is not admissible without proof that the original is lost or otherwise beyond the power of the party to produce it. *Gelder* v. *Welsh,* 169 Mich. 490.

Plaintiffs claim that they had served counsel for defendant with notice to produce such instrument; but it never appeared that the document was ever in the possession or control of defendant or its counsel. Heston and Dawson claim that no such inventory ever existed. According to plaintiffs' own claim, the witness who made the alleged inventory was the auditor, Genter. They claim that he was the party who first prepared it and was the last person seen in possession of it. No subpœna was ever served upon him requiring the production of such instrument. Although Genter was examined as a witness, he was not asked by plaintiffs' counsel to furnish the inventory, nor was he interrogated in any respect as to whether he had possession of it or had ever prepared it. Plaintiffs made no effort to have the alleged inventory produced in court; and because of their failure to do so, or give some reason for their inability to produce it, the court properly refused to allow them to testify to the terms of such written instrument. There was nothing therefore before the court bearing upon the agreement of the parties except the contract of sale and the inventory and appraisal to which the said contract referred, and which all parties agreed had been submitted to them. Such inventory omitted all of the loans and accounts which plaintiffs claim to be due them from the corporation prior to the sale.

But, it is urged by plaintiffs that although such contract and inventory and appraisal may show that plaintiffs' claims against the corporation were omitted from the list of liabilities, nevertheless, there is no proof of the discharge of these claims by the plaintiffs. In passing upon the question it is necessary to examine the contract and dealings of the parties. In purchasing the company, Heston and Dawson agreed upon, and assumed the existence of, the fact that the only liabilities of the company were set forth in the statement of liabilities as shown by the inventory and appraisal. Plaintiffs also assumed and agreed to this fact in signing the contract. They may have had objections to it; but they accepted this statement as the basis of the contract.

But, it is claimed that, although the contract be construed as a sale by plaintiffs to purchasers of the entire assets and corporate stock of the defendant corporation, based upon an understanding that plaintiffs' claims against the corporation were not to be considered as outstanding liabilities, nevertheless, plaintiffs sold the stock as individuals and the buyers purchased as individuals; and therefore in a suit against the corporation Heston and Dawson cannot claim that the corporation is not liable for such corporate debt. Such argument implies that, conceding Heston and Dawson agreed to pay the corporate debts, they would not be obliged to pay plaintiffs' claim because it was omitted from the statement of liabilities; but that inasmuch as plaintiffs' claim was a corporate indebtedness, it was never cancelled by plaintiffs, as against the corporation.

But if the corporation be liable, payment must eventually be made directly or indirectly by Heston and Dawson as they are the only stockholders, directors and officers of the company.

A corporation will be looked upon as a legal entity, as a general rule, and until sufficient reason to the contrary appear; but when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons. *United States* v. *Milwaukee Refrigerator Transit Co.*, 142 Fed. 247.

The fiction that the corporate existence and corporate functions are distinct from that of the stockholders is introduced for convenience and to subserve the ends of justice; but when invoked in support of an end subversive of its policy, it should be, and is, disregarded by the courts. *Southern Electric Securities Co.* v. *State*, 91 Miss. 195 (44 South. 785, 124 Am. St. Rep. 638).

"The statement that a corporation is an artificial person or entity apart from its members is merely a description in figurative language of a corporation viewed as a collective body; a corporation is really an association of persons and no judicial dictum or legislative enactment can alter this fact." 1 Morawetz, Private Corporations (2d Ed.), § 227.

Where a railroad company created a telegraph company and, owning all its stock, sold the property of the telegraph company and its stock to a third party and received the purchase price, the railroad company was held liable, in equity, to pay a judgment against the telegraph company due to a contract made by the telegraph company before the sale. *Baltimore & Ohio Telegraph Co.* v. *Interstate Telegraph Co.*, 4 C. C. A. 184 (54 Fed. 50).

The abstraction of the corporate entity should never be allowed to bar out and pervert the real and obvious truth, 14 C. J. p. 61. In order to carry out the intention of the parties to the contract in this

case, we disregard the fiction that the corporate existence of defendant company was distinct from that of plaintiff stockholders at the time the stock was sold.

"If, in making a contract, the parties agree upon or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact so long as the contract stands, in the absence of fraud, * * * or mistake." 21 C. J. p. 1111.

Although a party to a contract had objections to it, yet having executed it, his mouth is closed against any denial that it superseded all previous arrangements. *Parish* v. *United States,* 8 Wall. (75 U. S.) 489.

Heston and Dawson were buying the company. They were purchasing the entire corporate stock and all of the company's assets from the sole owners of the corporation. Plaintiffs consented to the terms and executed the contract based upon the statement of assets and liabilities in which they approved the omission of their claims as accounts due them from the company. When they consented to the contract in which these accounts were omitted from consideration as owing to them by the company they contracted on the written understanding there were no liabilities due from the company to them. Plaintiffs' consent to such an agreement was, in effect, a consent to a discharge of their claims against the company. Under the circumstances, they are estopped from now setting up that there was no discharge of their claims. *Fourth National Bank of Grand Rapids* v. *Olney,* 63 Mich. 58.

Judgments affirmed, with costs to defendant.

Wiest, C. J., and Butzel, Bushnell, Sharpe, Chandler, and North, JJ., concurred. Potter, J., did not sit.