CORRIGAN, J.
(concurring in part and dissenting in part). I concur in part IV of the majority’s decision, which reverses the award of attorney fees to plaintiff. I respectfully dissent, however, from the majority’s conclusion in part III that plaintiffs W-2 wages established compensable loss of income from work under § 3107 of the no-fault act, MCL 500.3107(l)(b).
Plaintiff was the sole owner and sole employee of a subchapter S corporation that he operated at a loss that exceeded his wages. To establish compensable “loss of income from work” under MCL 500.3107(l)(b), plaintiff merely provided evidence that he paid himself W-2 wages. Defendant persuasively argues that plaintiffs W-2 wages were not a true measure of his income from work because plaintiffs work resulted in no actual income, but only created losses. Further, because of the unique tax status of S corporations, plaintiff reported the corporate losses on his personal tax returns and, as a result, paid no income tax on his wages. The no-fault act explicitly recognizes the relationship between income from work and taxable income in MCL 500.3107(l)(b), which provides that, generally, “[b]e-cause the benefits received from personal protection *17 insurance for loss of income are not taxable income, the benefits payable for such loss of income shall be reduced 15%
Under these circumstances, for our purposes, the W-2 is a meaningless form that merely reflects the cash flow plaintiff allowed himself from a business that generated no income from work. Reimbursing him for this lost cash flow would, therefore, subsidize his preexisting business losses; it would not compensate him for actual loss of income from work. I acknowledge that plaintiff and his corporation have separate legal identities. See ante at 8. But this fact does not alleviate plaintiffs burden to establish, as a matter of fact, that he suffered loss of income from work. Because defendant created a genuine issue of material fact regarding whether plaintiff can establish any “loss of income from work an injured person would have performed,” MCL 500.3107(l)(b), I would reverse and remand this case to the trial court for further proceedings.
I. STANDARD OP REVIEW
This Court reviews de novo a trial court’s decision granting or denying a motion for summary disposition. City of Taylor v Detroit Edison Co, 475 Mich 109, 115; 715 NW2d 28 (2006). This case involves a question of statutory interpretation, which we also review de novo. Haynes v Neshewat, 477 Mich 29, 34; 729 NW2d 488 (2007). The goal of statutory interpretation is to effectuate the Legislature’s intent as demonstrated by the text of the statute. Casco Twp v Secretary of State, 472 Mich 566, 571; 701 NW2d 102 (2005). “If the statutory language is unambiguous, the Legislature is presumed to have intended the meaning expressed in the statute and judicial construction is not permissible.” Id.
*18 II. ANALYSIS
The no-fault act describes the benefits available for “work loss” in pertinent part as those for
\w]ork loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured. Work loss does not include any loss after the date on which the injured person dies. Because the benefits received from personal protection insurance for loss of income are not taxable income, the benefits payable for such loss of income shall be reduced 15% unless the claimant presents to the insurer in support of his or her claim reasonable proof of a lower value of the income tax advantage in his or her case, in which case the lower value shall apply. [MCL 500.3107(l)(b) (emphasis added).]
“Work-loss benefits replace income that a claimant would have earned had he not been injured.” Popma v Auto Club Ins Ass’n, 446 Mich 460, 472; 521 NW2d 831 (1994). These benefits “are meant primarily to provide claimants with simple income insurance and are intended to compensate claimants approximately dollar for dollar for the amount of wages lost because of the injury or disability.” Id. Compensable work loss is not always measured by reference to a claimant’s preaccident wages, however. The statute defines “work loss” not as “lost wages,” but as “loss of income from work.” MCL 500.3107(l)(b) (emphasis added). In accord, for example, an independent contractor may seek work-loss benefits because “work loss includes not only lost wages, but also lost profit which is attributable to personal effort and self-employment.” Kirksey v Manitoba Pub Ins Corp, 191 Mich App 12, 17; 477 NW2d 442 (1991). Most significantly, “[i]n all cases, claimants are left to their proofs.” Popma, supra at 472. A plaintiff “will not be allowed to manipulate the statutory scheme to avoid this burden of proof.” Id.
*19 As noted, plaintiff is the sole shareholder and sole employee of an S corporation. Shareholders of a small-business corporation may elect for the corporation to be treated as an S corporation under subchapter S of the Internal Revenue Code. 26 USC 1361(a)(1); 26 USC 1362(a)(1). An S corporation is generally not taxed directly by the federal government. 26 USC 1363(a). Instead, its tax liabilities and deductions, including income and losses, pass through to the individual shareholders on a pro rata basis. 26 USC 1366. “The effect is to treat electing corporations more like partnerships, since partnership income flows through to the partners and is taxed accordingly.” Chocola v Dep’t of Treasury, 422 Mich 229, 236; 369 NW2d 843 (1985).
Plaintiffs corporation reported overall losses that exceeded plaintiffs wages in 2001, 2002, and 2003. He listed the corporation’s losses on his personal income tax return. Accordingly, defendant offered as evidence the opinion of an accounting expert who concluded that, although plaintiff reported W-2 wages, he suffered no actual loss of income from work. Defendant argues that, under these circumstances, plaintiff should not be treated as a wage-earning employee of a distinct corporation. Rather, plaintiffs yearly income from work should be calculated by subtracting his business expenses from his gross receipts, as was done in Adams v Auto Club Ins Ass’n, 154 Mich App 186; 397 NW2d 262 (1986).
As the majority explains, ante at 13, the Adams panel acknowledged that the “goal of the no-fault act is to place individuals in the same, but no better, position than they were before their automobile accident.” Adams, supra at 193. It opined that the self-employed “plaintiff [could] not claim that his actual expendable income included even that income which he was re *20 quired to pay out as business expenses.” Id. Therefore, to avoid overcompensating the self-employed plaintiff in Adams, it was appropriate to conduct a factual inquiry into whether certain business-related expenses should be deductible for purposes of determining work-loss benefits. Id. at 193-194.
I agree with defendant and find Adams applicable. Here, plaintiff operated his business at a loss that exceeded his W-2 income, and he reported his corporate losses for tax purposes. Indeed, plaintiff and his wife had no taxable income in 2001, 2002, and 2003. Most significantly, plaintiffs work as the sole employee of his corporation resulted in no income — but only overall losses — to the corporation. The expert opinion offered by defendant, which recounted these facts and conclusions, created a genuine issue of material fact regarding whether plaintiff can establish any “loss of income from work an injured person would have performed. ...” MCL 500.3107(l)(b). Put otherwise, defendant created a genuine issue of material fact with regard to whether plaintiffs W-2 wages constituted a correct measure of his loss of income from work.
In adopting the reasoning of the Court of Appeals in this case, the majority stresses that, to the contrary, plaintiff should merely be treated as any employee of a corporation that is operating at a loss. Ante at 8. But plaintiff cannot be compared directly to an employee of any corporation that is operating at a loss. Employees of subchapter C corporations receive real income, which is in no way offset by corporate losses, and must pay income taxes on their wages regardless of whether the corporation, itself, operates at a loss. Here, plaintiff used the S corporation’s losses to offset his wages and, as a result, he was relieved from paying any federal income tax.
*21 Further, this and other courts explicitly recognize the unique nature of S corporations, which are often more comparable to partnerships than to corporations. Chocola, supra at 243 (“Subchapter S corporations enjoy unique characteristics that provide a compelling analogy to partnerships, which produce apportionable business income in the hands of member partners . . . .”); Tetlak v Village of Bratenahl, 92 Ohio St 3d 46, 48; 748 NE2d 51 (2001) (stating that subchapter S “treat[s] corporate income, losses, deductions, and credits as if incurred by individual shareholders in a manner akin to the tax treatment of partnerships”), citing Bufferd v Internal Revenue Comm’r, 506 US 523, 524-525; 113 S Ct 927; 122 L Ed 2d 306 (1993). Shareholders of an S corporation are taxed on the basis of their pro rata shares of all items of corporate income and loss, regardless of whether the income or loss is separately computed. 26 USC 1366(a). Similarly, when it is necessary to compute a shareholder’s annual gross income, it is calculated as his pro rata share of the corporation’s gross income. 26 USC 1366(c). As the Ohio Supreme Court observed in Tetlak, supra at 49, S corporations are not taxed as C corporations; rather, taxable income is computed essentially as if the S corporation were an individual. Therefore, shareholder income is characterized as if it originated from whatever source generated the income for the corporation. Id.; 26 USC 1366(b).
For these reasons, I conclude that a work-loss claim of a sole shareholder and sole employee of an S corporation is subject to a factual inquiry concerning the actual amount of lost income from work. In a given case, I may not disagree with the majority of my colleagues that the W-2 wages of an employee of an S corporation may be comparable to the wages of an employee of a C corporation and will be the appropriate *22 measure of loss of income from work. The facts in this case, however, reveal a sole shareholder operating his S corporation essentially as a sole proprietorship. Here, plaintiff does not offer a principled argument that his gross income and operating expenses fail to reflect the most accurate measure of his actual income from work. Rather, he advocates a rule treating W-2 wages as the measure of loss of income from work under all circumstances simply because he is an employee of a corporation.
By adopting such a rule, the majority treats otherwise similarly situated sole proprietors differently on the mere basis of whether they choose to incorporate. Further, contrary to the majority’s assertion, ante at 10, I do not think that my position requires a “de facto piercing of the corporate veil” in any traditional sense. Rather, I recognize that plaintiffs profits or losses as the sole shareholder and sole proprietor of an S corporation may bear on whether he lost income from work as a matter of fact. Moreover, to any extent my view may be cast as requiring us to pierce the corporate veil, it is not at all clear that doing so would be inappropriate under these circumstances. As I have observed on more than one occasion, this Court has failed to establish clear standards for piercing the corporate veil. See L & R Homes, Inc v Jack Christenson Rochester, Inc, 475 Mich 853 (2006) (CORRIGAN, J., dissenting). As the Court of Appeals observed in Kline v Kline, 104 Mich App 700, 702-703; 305 NW2d 297 (1981), this Court has historically treated corporations and sole shareholders “as one for certain purposes,” in part because the “fiction of a corporate entity different from the stockholders themselves was introduced for convenience and to serve the ends of justice, but when it is invoked to subvert the ends of justice it should be and is disregarded by the *23 courts.” “Each case involving disregard of the corporate entity rests on its own special facts.” Id. at 703.[1]
Most significantly, a rule treating W-2 wages as the measure of loss of income from work under all circumstances is not consistent with the no-fault act’s intent to compensate for the actual loss of work-related income caused by an accident. The no-fault act “is not designed to provide compensation for all economic losses suffered as a result of an automobile accident injury.” Belcher v Aetna Cas & Surety Co, 409 Mich 231, 245; 293 NW2d 594 (1980). Michigan courts have consistently engaged in factual inquiries to determine the true measure of an *24 injured person’s compensable accident-related losses. For instance, in MacDonald v State Farm Mut Ins Co, 419 Mich 146, 150; 350 NW2d 233 (1984), the plaintiffs injuries from a car accident would have prevented him from working for a period of 28 months. During that period, however, he suffered a heart attack that disabled him from work for an indefinite amount of time. Id. This Court examined the language of former MCL 500.3107(b), a predecessor of MCL 500.3107(l)(b), both versions of which nearly are identical to § 1(a)(5)(h) of the Uniform Motor Vehicle Accident Reparations Act (UMVARA). Id. at 151. We observed that, “by adopting the language of such a model act, it is evident that the Legislature ‘was cognizant of, and in agreement with, the policies which underlie the model acts’ language’.” Id., quoting Miller v State Farm Mut Automobile Ins Co, 410 Mich 538, 559; 302 NW2d 537 (1981). Accordingly, we found the comments to § 1(a)(5) of the UMVARA relevant to Michigan’s act. MacDonald, supra at 151. The relevant comments read:
“Work loss”, as are the other components of loss, is restricted to accrued loss, and thus covers only actual loss of earnings as contrasted to loss of earning capacity. Thus, an unemployed person suffers no work loss from injury until the time he would have been employed but for his injury. On the other hand, an employed person who loses time from work he would have performed had he not been injured has suffered work loss * * *. Work loss is not restricted to the injured person’s wage level at the time of injury. For example, an unemployed college student who was permanently disabled could claim loss, at an appropriate time after the injury, for work he would then be performing had he not been injured. Conversely, an employed person’s claim for work loss would be appropriately adjusted at the time he would have retired from his employment.” [Id., quoting the comments to § 1(a)(5) of the UMVARA, found in 14 ULA 46-47.]
*25 Both the clear language of former MCL 500.3107(b) and the comments to the UMVARA led the MacDonald Court to conclude “that work-loss benefits are available to compensate only for that amount that the injured person would have received had his automobile accident not occurred.” Id. at 152. The plaintiffs wages before the accident were not an automatic, true measure of his ongoing loss. Rather, the plaintiff “would have worked and earned wages for two weeks, until the date of his heart attack. After that date plaintiff would have earned no wage even had the accident not occurred and, therefore, [he was] ineligible for work-loss benefits after that date under § 3107(b).” Id. The import of the MacDonald Court’s decision was to “allow insurers to use the act as it was intended and avoid paying compensation not due the claimant.” Id. at 154 (emphasis added).
This Court employed similar reasoning, and relied on MacDonald, to hold in favor of the plaintiff in Marquis v Hartford Accident & Indemnity (On Remand), 444 Mich 638; 513 NW2d 799 (1994). There, the plaintiff was injured in an accident and alleged that her resulting temporary injury caused her to lose her job. During her period of disability, her job was offered to a permanent replacement employee. She was then unable to find a job that paid a similar amount. Id. at 640. She alleged that, although her period of disability had ended, she qualified for full work-loss benefits during the statutory three-year period because, but for the accident, she would have remained employed in her previous position. Id. at 642. This Court agreed that, although the availability of lower-paying work could be considered in terms of the plaintiffs obligation to mitigate her damages, she had created a genuine issue of material fact regarding whether the accident was the but-for cause of her loss of income at a higher wage. Id. at 649-650.
*26 In sum, this Court has consistently condoned careful factual inquiry regarding the true measure of actual income lost as a direct result of an automobile accident. I also find it striking that Justice KELLY herself employed reasoning similar to that of the MacDonald and Marquis courts as the author of the Court of Appeals opinion in Kirksey. In Kirksey, she was presented with a plaintiff independent contractor who was injured while working for a trucking company. Kirksey, supra at 13-14. At the time of his injury, the plaintiff had the option of working for a second trucking company, which guaranteed him more hours and pay, if the first company was unable to fulfill its promises of more hours and certain benefits. Id. at 13. The plaintiff claimed that, because the first company offered him reduced hours at the time of his injury, the amount of his loss of income from work should not have been based on his earnings at the time of the accident. Rather, because he would have returned to work full-time at the second company but for his accident, his benefits should have been based on his earnings during his previous work with the second company. Id. at 14. Judge KELLY recognized that wages alone are not always a measure of loss of income from work; rather, an independent contractor such as the plaintiff could seek work-loss benefits because “work loss includes not only lost wages, but also lost profit which is attributable to personal effort and self-employment.” Id. at 17. I note that this comment directly reflects the comments to § 1(a)(5) of the UMVARA, which comments state, in part: “Work loss includes not only lost wages, but lost profit which is attributable to personal effort in self-employment (as distinguished from profit attributable from investment) .... [T]he issue is whether claimed work loss is justly attributable to the injury.” 14 ULA 47 (emphasis added). In Kirksey, Judge KELLY held that the plaintiffs *27 earnings at the time of his accident were not necessarily the true measure of his loss of income as a result of the accident. Kirksey, supra at 16. Rather, if a jury were to find that, absent his injury, the plaintiff would have earned a higher income from the second company, his loss of income from work might be premised on that higher income. Id.
I am unable to square the majority’s holding in this case with Michigan jurisprudence, including MacDonald, Marquis, and Kirksey. The clear import of the no-fault act and these cases interpreting it is that an injured plaintiff may recover work-loss benefits on the basis of his actual loss of income, as reflected by the factual record.[2] Accordingly, I cannot agree with the majority’s decision to establish a rule that, just because a sole proprietor incorporates his business, he will be treated differently than a sole proprietor with the same actual income and losses.[3]1 would hold that plaintiff did not meet his burden to prove his actual amount of work *28 loss merely by submitting his yearly W-2 wage amounts. Rather, because defendant showed that plaintiff operated his S corporation at a loss, defendant created a genuine issue of material fact concerning the amount, if any, of plaintiffs actual loss of income from work. I would reverse the Court of Appeals judgment affirming summary disposition under MCR 2.116(C)(10) in plaintiffs favor and remand this case to the trial court. I would further require plaintiff to offer proof on remand of the true measure of income from work that is necessary to put him in the same, but no better, position than the one he occupied before his accident.
MARKMAN, J., concurred with CORRIGAN, J.

 The Kline Court’s full discussion follows:
Complete identity of interest between sole shareholder and corporation may lead courts to treat them as one for certain purposes. Williams v America Title Ins Co, 83 Mich App 686; 269 NW2d 481 (1978). Where the corporation is a mere agent or instrumentality of its shareholders or a device to avoid legal obligations, the corporate entity may be ignored. People ex rel Attorney General v Michigan Bell Telephone Co, 246 Mich 198, 205; 224 NW 438 (1929). A court may look through the veil of corporate structure to avoid fraud or injustice. Schusterman v Employment Security Comm, 336 Mich 246; 57 NW2d 869 (1953). The community of interest between corporation and shareholders may be so great that, to meet the purposes of justice, they should be considered as one and the same. L A Walden & Co v Consolidated Underwriters, 316 Mich 341, 346; 25 NW2d 248 (1946). When the notion of a corporation as a legal entity is used to defeat public convenience, justify a wrong, protect fraud or defend crime, that notion must be set aside and the corporation treated as the individuals who own it. Paul v Univ Motor Sales Co, 283 Mich 587, 602; 278 NW 714 (1938). The fiction of a corporate entity different from the stockholders themselves was introduced for convenience and to serve the ends of justice, but when it is invoked to subvert the ends of justice it should be and is disregarded by the courts. Paul, supra. A court’s treatment of a corporate entity clearly rests on notions of equity, whether it is an action at law or at equity. Bach case involving disregard of the corporate entity rests on its own special facts. Brown Bros Equip Co v State Hwy Comm, 51 Mich App 448; 215 NW2d 591 (1974). [Id. at 702-703.]

 Because actual loss as a matter of fact is the central inquiry, Justice Kelly’s attempt in her concurring opinion to distinguish the Kirksey plaintiff on the basis that he was an independent contractor, ante at 15, is inapposite. Further, a hypothetical example involving an independent contractor illustrates my overall point. What if an independent contractor, such as the one in Kirksey, chooses to incorporate and file as an S corporation for tax or liability reasons, thereby becoming the sole shareholder, sole proprietor, and sole employee of a company that hired out his services? As a factual matter, how would his actual income earned from work change as a mere result of his changing his legal status? Why would his actual W-2 wages automatically become a more accurate measure of his income upon incorporation?

 Farm Bureau Mutual Insurance Company of Michigan raises a similar problem in its amicus curiae brief. It notes that injured, self-employed farmers may not be able to prove actual loss of income after an automobile accident. Therefore, farmers may elect to add replacement-labor endorsements to their no-fault policies. Such endorsements require an insurer to pay for farmer replacement labor in the event of a disabling accident. Farm Bureau reasonably asks why plaintiff should receive *28 replacement wages for work he performed that resulted in a loss when he is not required to elect and pay for a comparable endorsement.