POPMA v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 96795. Argued April 6, 1994 (Calendar No. 7). Decided August 26, 1994.

Edward Popma, Jr., brought an action in the Kent Circuit Court against Auto Club Insurance Association, his no-fault insurer, seeking to recover work-loss benefits after breaking his leg in a one-car accident. The court, Robert A. Benson, J., granted summary disposition for the plaintiff, holding that he had been temporarily unemployed at the time of the accident because he did not have a full-time job, and that under MCL 500.3107a; MSA 24.13107(1) his work loss was equal to what he earned during his last month of full-time employment multiplied by the number of weeks of disability. The court also held that the entire amount of the plaintiff's social security disability benefits, including the portion paid directly to his attorney as a fee, was required to be set off against his no-fault benefits pursuant to MCL 500.3109(1); MSA 24.13109(1). The Court of Appeals, MacKenzie, P.J., and Griffin, J. (Connor, J., concurring), in an opinion per curiam, affirmed the setoff, and reversed regarding the issue of work loss (Docket No. 136525). The plaintiff appeals.

In an opinion by Chief Justice Cavanagh, joined by Justices Brickley, Boyle, Riley, and Griffin, the Supreme Court held:

A person who is employed, even less than full-time, by definition, is not unemployed; thus work-loss benefits to which such a person is entitled as a result of injuries received in an automobile accident are to be calculated pursuant to § 3107(1)(b), and are limited to what the person would have earned but for the accident. Further, the entire amount of social security disability benefits to which the person is entitled is subject to

REFERENCES

Am Jur 2d, Workers' Compensation §§ 111, 139, 141-143, 416-419.

Insured's receipt of or rights to workmen's compensation benefits as affecting recovery under accident, hospital, or medical expense policy. 40 ALR3d 1012.

Validity and construction of no-fault insurance plans providing for reduction of benefits otherwise payable by amounts receivable from independent collateral sources. 10 ALR4th 996.

setoff pursuant to § 3109(1), including the amount of benefits paid directly to the person's attorney as a fee.

1. The no-fault provisions governing the award of work-loss benefits are contingent on the employment status of a claimant at the time of an accident. Section 3107(1)(b) applies when a claimant is working at the time of the accident, while § 3107a applies when a claimant is temporarily unemployed, suffering an unavailability of work at the time of the accident. "Unemployed," as used in § 3107a, is not defined in the act, and thus its ordinary meaning—out of work, jobless—applies. In this case, the plaintiff did not show an unavailability of work at the time of the accident; he was not out of work or jobless. The fact that he was working two part-time jobs shows that work suitable to his qualifications and experience was available and logically precludes any finding of unemployment. Further, although § 3107a embodies a legislative intent to extend work-loss benefits to persons who, had they not been involved in an automobile accident, could have received unemployment compensation as an income substitute, the simple receipt of unemployment compensation alone is not dispositive for purposes of § 3107a; once a person establishes unemployment, it is the characterization of the unemployment as temporary or permanent that is dispositive. Thus, the plaintiff's work-loss benefits must be determined pursuant to § 3107(1)(b).

2. Section 3107(1)(b) makes no distinction between part-time and full-time work. Nothing in § 3107(1)(b) expressly limits eligibility for work-loss benefits to full-time employees. Work-loss benefits replace income that a claimant would have earned but for the injury and are not necessarily restricted to a claimant's wage at the time of the accident. Thus, even if a claimant is working a lower paying part-time job at the time of an accident, that claimant is not precluded from proving that a higher paying full-time job would have been accepted but for the injury.

3. Attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides to the contrary. There is no common-law exception or any statute or court rule that would allow the plaintiff in this case to shift the burden of his attorney fees to the defendant. Section 3109(1) of the no-fault act, which requires mandatory setoff of benefits provided, or required to be provided, by state or federal law, is intended to prevent the recovery of benefits that duplicate benefits provided by the no-fault insurer, thereby preventing a double recovery. The fact that some of the plaintiff's social security disability benefits were used to discharge a debt does

not change the amount of social security benefits required to be provided by federal law on his behalf; it simply affects how that money is spent. Thus, the entire amount of social security disability benefits, including that amount paid directly to his attorney, is subject to setoff pursuant to § 3109(1).

Affirmed and remanded.

Justice LEVIN, joined by Justice MALLETT, concurring in part and dissenting in part, stated that "benefits provided or required to be provided" means the amount actually provided and received by a no-fault insured net of the reasonable cost of recovery.

There is no duplicate recovery by a no-fault insured to the extent that reasonable attorney fees are incurred to recover social security benefits or, in another case, worker's compensation benefits. It should not be assumed that the plaintiff or his lawyer failed to seek an award of attorney fees that would have been paid by the federal government absent record evidence. Rather, remand for a factual determination would be appropriate.

199 Mich App 653; 502 NW2d 378 (1993) affirmed.

1. INSURANCE — NO-FAULT — WORK-LOSS BENEFITS — PART-TIME EMPLOYMENT.

A person who is employed, even less than full-time, by definition, is not unemployed; thus work-loss benefits to which such a person is entitled as a result of injuries received in an automobile accident are to be calculated pursuant · to MCL 500.3107(1)(b); MSA 24.13107(1)(b), and are limited to what the person would have earned but for the accident.

2. INSURANCE — NO-FAULT — WORK-LOSS BENEFITS — SOCIAL SECURITY DISABILITY BENEFITS — ATTORNEY FEES.

The entire amount of social security disability benefits to which a claimant is entitled is subject to setoff against work-loss benefits, including the amount of benefits paid directly to the claimant's attorney as a fee (MCL 500.3109[1]; MSA 24.13109[1]).

*Williams, Klukowski, Fotieo, Szczytko* (by *Paul A. Williams*) for the plaintiff.

*Nancy L. Bosh* and *James G. Gross* for the defendant.

CAVANAGH, C.J. This no-fault insurance case

presents two questions: (1) whether a person working less than full-time is "temporarily unemployed" as that term is used in MCL 500.3107a; MSA 24.13107(1),[1] and (2) whether a claimant may subtract the amount of attorney fees paid to secure an award of social security disability benefits from the amount of those benefits subject to setoff pursuant to MCL 500.3109(1); MSA 24.13109(1).[2]

We hold that a person who is employed, even one who is employed less than full-time, is not, by definition, unemployed. Plaintiff's work loss is, therefore, calculated pursuant to MCL 500.3107(1)(b); MSA 24.13107(1)(b), and limited to what he would have earned had he not been involved in the accident. We remand this case to the trial court for a determination of plaintiff's work loss.

We also hold that the entire amount of social security disability benefits that plaintiff is entitled to is subject to setoff pursuant to § 3109(1), including the amount of those benefits paid directly to plaintiff's attorney as a fee. A contrary holding would allow plaintiff to shift the burden of his attorney fees onto his no-fault insurer in violation of our common law. Moreover, it would allow plaintiff a double recovery, to the extent of the attorney fees, because the disability benefits paid to his attorney discharged a debt of the plaintiff without a corresponding decrease in his work-loss benefits.

---

[1]   Subject to the provisions of section 3107(1)(b), work loss for an injured person who is temporarily unemployed at the time of the accident or during the period of disability shall be based on earned income for the last month employed full time preceding the accident. [MCL 500.3107a; MSA 24.13107(1).]

[2]   Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury. [MCL 500.3109(1); MSA 24.13109(1).]

I

The facts in this case are largely undisputed. The plaintiff broke his leg in a one-car accident on September 23, 1988. The defendant is plaintiff's no-fault insurer. The plaintiff brought suit in Kent Circuit Court to recover, among other things, work-loss benefits. Both parties moved for summary disposition on the basis of the following facts.

Beginning on August 18, 1988, and continuing until the time of the accident, plaintiff worked part-time jobs at both Manpower[3] and Norm's Restaurant in Grand Rapids. While working part-time, plaintiff also received unemployment compensation, apparently because his wages did not exceed one-half the amount of unemployment compensation due.[4] Almost four months before the accident, plaintiff had been employed full-time, making $10.47 an hour at Hydaker-Wheatlake in Traverse City. He worked there from April 18, 1988, until he was fired on June 2, 1988.[5] This was

---

[3] A temporary employment agency.

[4] See MCL 421.27(c); MSA 17.529(c).

[5] Plaintiff's work history is chronicled by the Court of Appeals:

Plaintiff worked sporadically in Grand Rapids, the State of Texas, and Gaylord after he left high school in his junior year. After being unemployed for two years, he went to Georgia, where he spent 2½ years working in the construction industry. Upon his return to Michigan in January 1987, plaintiff went to Traverse City, where he worked eleven days in an oil field. Plaintiff hung drywall for a brief period, then in June 1987 returned to Grand Rapids, where he worked for Manpower until March 1988. Plaintiff also worked at Norm's Restaurant from September 1987 until February 1988. He then obtained a job doing general maintenance, which he held from February until March 1988.

When he quit his Manpower and maintenance jobs, plaintiff entered an apprenticeship program working for Newkirk Electric, but was laid off after one week. Plaintiff next worked as an apprentice substation electrician for Hydaker-Wheatlake Com-

plaintiff's last full-time job before the accident.

The trial court held that plaintiff was temporarily unemployed because he did not have a full-time job at the time of the accident. Because he was temporarily unemployed, the trial court reasoned, § 3107a applied and his work loss was equal to what he earned during his last month of full-time employment at Hydaker-Wheatlake multiplied by the number of weeks of disability. The trial court also held that the entire amount of plaintiff's social security disability benefits, including the portion paid directly to his attorney as a fee, had to be set off against his no-fault benefits pursuant to § 3109(1).

Defendant appealed as of right the trial court's order granting plaintiff summary disposition, and the plaintiff cross-appealed that part of the order allowing defendant to set off the entire amount of social security disability benefits. The Court of Appeals reversed the decision of the trial court regarding the work-loss issue, but affirmed the setoff.

> It is clear . . . that the Legislature has seen fit to authorize work-loss benefits for persons whose work status falls within one of only two categories —employed or temporarily unemployed. Irrespective of the nature of the work being performed, an underemployed person is, by definition, employed. Plaintiff, as an employee of both Manpower and Norm's Restaurant, was employed at the time of the accident. He was therefore entitled to benefits as set forth in § 3107(1)(b) and not § 3107a.
>
> * * *
>
> Neither the fact that plaintiff's attorney received his fee directly from the Social Security

pany in Traverse City from April 18, 1988, until June 2, 1988. [199 Mich App 653, 655-656; 502 NW2d 378 (1993).]

Administration nor the fact that this money never actually passed through plaintiff's hands precludes a setoff for the entire amount of social security disability benefits to which plaintiff was entitled. [199 Mich App 653, 657-658; 502 NW2d 378 (1993).]

In a concurring opinion, Judge CONNOR held that although he agreed that plaintiff was not temporarily unemployed at the time of the accident, the amount of money plaintiff would have earned is a factual question and no facts were adduced at trial establishing plaintiff's actual work loss. Accordingly, he concluded that the case should be remanded and the plaintiff allowed to present proofs regarding the amount of his work loss.

II

The first question presented by this case requires that we examine, once again, the interplay between §§ 3107(1)(b), and 3107a of the no-fault act.

A

The provisions governing the award of work-loss benefits are contingent on the employment status of the claimant at the time of the accident. Section 3107(1)(b) applies when a claimant is working at the time of the accident, while § 3107a applies when a claimant is temporarily unemployed. Section 3107 provides, in part:

(1) Except as provided in subsection (2), personal protection insurance benefits are payable for the following:

* * *

(b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured. [MCL 500.3107(1)(b); MSA 24.13107(1)(b).]

Section 3107a provides, in its entirety:

Subject to the provisions of section 3107(1)(b), work loss for an injured person who is temporarily unemployed at the time of the accident or during the period of disability shall be based on earned income for the last month employed full time preceding the accident. [MCL 500.3107a; MSA 24.13107(1).]

Although the specific issue presented in this case appears to be one of first impression for this Court,[6] we examined the interplay between §§ 3107 and 3107a in *MacDonald v State Farm Mutual Ins Co*, 419 Mich 146; 350 NW2d 233 (1984). A careful reading of both the majority and dissenting opinions in *MacDonald* shows that this Court unani-

---

[6] The Court of Appeals has addressed issues similar to the one presented here in various cases. See *Davis v State Farm Mutual Automobile Ins Co*, 159 Mich App 734, 739; 407 NW2d 1 (1987) (holding that a casually employed plaintiff could not collect under § 3107a because the facts showed that he was permanently unemployed); *Szabo v DAIIE*, 136 Mich App 9, 13; 355 NW2d 619 (1983) (holding that the plaintiff's unemployment would not have been permanent had he not been involved in the accident, thus he was "temporarily unemployed"); *Oikarinen v Farm Bureau Mutual Ins Co*, 101 Mich App 436, 439; 300 NW2d 589 (1980) (holding that the plaintiff, having been unemployed for four years, was not "temporarily unemployed" but, rather, was permanently unemployed), and *Kennedy v Auto-Owners Ins Co*, 87 Mich App 93, 96-97; 273 NW2d 599 (1978) (holding that § 3107 was designed to compensate accident victims for all loss of income, whether from full-time or part-time employment, resulting from injuries suffered in an automobile accident).

The exact issue presented by this case was specifically avoided in *Kirksey v Manitoba Public Ins Corp*, 191 Mich App 12, 16; 477 NW2d 442 (1991), when that Court held: "it is unnecessary for us to determine whether a person working less than forty hours per week when injured may be considered temporarily unemployed under § 3107a."

mously agreed to several principles underlying § 3107a.

For example, all agreed that the legislative purpose behind § 3107a was to address the implication created by § 3107(1)(b) that one must actually be employed at the time of the accident to qualify for work-loss benefits. Indeed, the Legislative Analysis of HB 4221, which became § 3107a, bears this out:

"[The lack of a concise definition of loss of income in § 3107[1](b)] has given rise to certain problems in connection with persons who are seasonally employed or temporarily unemployed as a result of lay-offs, and who are disabled as a result of an auto accident. In the case of a worker who is unemployed at the time of an accident or during the period of disability, the law might be construed as providing for no work loss benefits since the worker would have had no income at that time, had he/she not been injured. In addition, disabled workers are not entitled to unemployment compensation since benefits are not payable to a person who is unable to work. An unemployed worker who is disabled in an auto accident may thus find him/herself without benefits of either sort." [*MacDonald, supra* at 152-153, quoting Analysis, HB 4221, November 21, 1975.]

Moreover, all agreed that § 3107a was designed to provide work-loss benefits for a claimant who is temporarily unemployed at the time of the accident because of a lack of available employment or one who becomes temporarily unemployed during a period of disability. In so holding, the majority observed:

The phrase "temporarily unemployed," it is evident to us, refers to the unavailability of employment, not the physical inability to perform work. The legislative analysis of HB 4221 reveals a

legislative concern with those who but for their disability could have received unemployment compensation as a substitute income. [*MacDonald, supra* at 153, see also CAVANAGH, J., dissenting at 156-157.]

By enacting § 3107a, the Legislature intended to remedy the situation in which a claimant is precluded from receiving any work-loss benefits because the claimant is unemployed at the time of the accident. Therefore, § 3107a permits a temporarily unemployed claimant to recover work-loss benefits when they would have previously been automatically precluded from doing so. However, the primary focus is on the availability of work at the time of the accident.

B

Our application of § 3107a in this case is guided by *MacDonald.* The plaintiff has not distinguished the case at bar from *MacDonald*[7] and we see no principled reason to depart from *MacDonald's* analysis regarding the legislative intent[8] underlying § 3107a. In *MacDonald,* this Court held that § 3107a applies when a claimant suffers an *unavailability* of work at the time of the accident. Plaintiff in this case has not shown an unavailability of work at the time of the accident. Indeed, the fact that he was working two part-time jobs shows that work suitable to his qualifications and experience was available. Moreover, the fact that plaintiff was employed logically precludes any finding of unemployment.

The Legislature did not define the word "unem-

---

[7] Nor even cited it for that matter.

[8] It hardly bears repeating that the primary goal of statutory construction is to effectuate legislative intent. *In re Certified Question,* 433 Mich 710, 722; 449 NW2d 660 (1989).

ployed" as used in § 3107a, therefore, its ordinary meaning applies. MCL 8.3a; MSA 2.212(1). Reference to a dictionary is appropriate to ascertain what the ordinary meaning of a word is. See *Town & Country Dodge v Treasury Dep't,* 420 Mich 226, 241-242; 362 NW2d 618 (1984). *The American Heritage Dictionary of the English Language, Second College Edition,* defines unemployed as "out of work; jobless." We believe that the Legislature intended this ordinary meaning of "unemployed" to apply and not the strained definition plaintiff· urges. Had the Legislature intended "unemployed" to mean "all people working less than full time," it would have so stated. Section 3107a simply does not apply to plaintiff because he was not "out of work" or "jobless." It is clear that the Legislature intended § 3107a to apply only to those individuals confronted with a temporary and complete unavailability of work.

We recognize that § 3107a embodies a legislative intent to extend work-loss benefits to those people who, had they not been involved in an automobile accident, could have received unemployment compensation as an income substitute. *MacDonald* at 153. However, the simple receipt of unemployment compensation alone is not dispositive for § 3107a purposes. The plain language of the statute leaves no doubt that once a person establishes unemployment, it is the characterization of that unemployment as temporary or permanent that is dispositive and not whether the person is receiving unemployment compensation.

The receipt of unemployment compensation says little about whether a person is completely unemployed because, as in this case, one may be partially employed and still receive compensation. The conclusion of complete unemployment does not, therefore, invariably follow from one's eligibil-

ity for unemployment compensation. Furthermore, the receipt of unemployment compensation does not establish the permanency of that unemployment. Accordingly, the receipt of some unemployment compensation, as the plaintiff was receiving here, does not definitively answer the question whether a person is "temporarily unemployed," as that term is used in § 3107a.

C

Having concluded that the plaintiff in this case is not unemployed, thereby precluding application of § 3107a, his work loss must be determined pursuant to § 3107(1)(b). We believe that the Legislature intended § 3107(1)(b) to govern the amount of work-loss benefits for those employed on either a part-time or full-time basis. Section 3107(1)(b) makes no distinction between part-time and full-time work while § 3107a does. "Work-loss" is defined in § 3107(1)(b) as a "loss of income from *work* an injured person would have performed . . . if he or she had not been injured." (Emphasis added.) Section 3107a provides that work loss for a person temporarily unemployed "shall be based on earned income for the last month employed *full time* preceding the accident." (Emphasis added.)

When the Legislature wanted to distinguish between full-time and part-time employment it did so. The fact that it did not do so in § 3107(1)(b), suggests that no such distinction was intended. Nothing in § 3107(1)(b) expressly limits eligibility for work-loss benefits to full-time employees. We think the most reasonable interpretation of § 3107(1)(b) is that the Legislature intended to compensate claimants for all work loss, whether from full-time or part-time work, resulting from injuries sustained in a car accident.

Contrary to plaintiff's dire warnings, this interpretation does not punish a person who loses a higher paying full-time job and is temporarily working a part-time job at the time of an accident. Work-loss benefits replace income that a claimant would have earned had he not been injured. *Marquis v Hartford Accident & Indemnity (After Remand),* 444 Mich 638, 647-648; 513 NW2d 799 (1994), quoting *Nawrocki v Hawkeye Security Ins Co,* 83 Mich App 135, 140-141; 268 NW2d 317 (1978). Work-loss benefits are not necessarily restricted to a claimant's wage at the time of the accident. *MacDonald, supra* at 151. Thus, even if a claimant is working a lower paying part-time job at the time of the accident, that claimant is not precluded from proving that he would have taken a higher paying full-time job had he not been injured in a car accident. In all cases, claimants are left to their proofs.[9]

The plaintiff in this case will not be allowed to manipulate the statutory scheme to avoid this burden of proof. Work-loss benefits are meant primarily to provide claimants with simple income insurance and are intended to compensate claimants approximately dollar for dollar for the amount of wages lost because of the injury or disability. Allowing the plaintiff in this case to base his work loss, without any proof of actual loss, on the highest paying job he ever had could result in an award in excess of the dollar for dollar exchange envisioned by the statute.

D

We affirm the decision of the Court of Appeals.

[9] On remand, if plaintiff is able to prove that he would have taken a job similar to, or better than, the job he had at Hydaker-Wheatlake had he not been involved in the accident, then his work-loss benefits will so reflect.

A claimant who is "employed" is by definition not "unemployed," temporarily or otherwise. An employed claimant's work-loss benefits are calculated pursuant to § 3107(1)(b). We also agree with Judge CONNOR that plaintiff must have the opportunity on remand to prove what he would have made had he not been involved in the accident.

### III

The next issue calls on us to decide whether the defendant may set off the net amount of plaintiff's social security benefits, less plaintiff's attorney fees, or the entire amount of those benefits provided on his behalf by the Social Security Administration.[10]

### A

Essentially, the argument that plaintiff advances shifts the burden of his attorney fees, generated in pursuit of his social security claim, onto his no-fault insurer. This result is achieved by application of § 3109(1):

> Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury. [MCL 500.3109(1); MSA 24.13109(1).]

If plaintiff is allowed to subtract the net amount of his social security disability benefits ($9,344.60) rather than the gross amount ($11,544.60), defendant's setoff will be reduced by the difference—the amount of plaintiff's attorney fees ($2,200). This,

[10] Plaintiff basically argues that because he did not actually receive, in hand, the money paid directly to his attorney, that amount should not be set off against his no-fault benefits.

in effect, places his no-fault carrier in the position of paying his attorney fees because its liability is increased in direct proportion to the fees withheld by the Social Security Administration and paid directly to plaintiff's attorney.[11]

For better or worse, the common-law tradition in Michigan follows what is sometimes called the "American rule" regarding attorney fees. See *Matras v Amoco Oil Co,* 424 Mich 675, 695; 385 NW2d 586 (1986); *In re Attorney Fees of Kelman, Loria, Downing, Schneider & Simpson,* 406 Mich 497, 503; 280 NW2d 457 (1979), quoting *Mills v Electric Auto-Lite Co,* 396 US 375, 391-392; 90 S Ct 616; 24 L Ed 2d 593 (1970). Under this rule, attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides to the contrary. See MCL 600.2405(6); MSA 27A.2405(6).

i

There are provisions of the no-fault act that do award attorney fees in limited situations. For example, MCL 500.3148; MSA 24.13148 provides for attorney fees when an insurance carrier withholds benefits unreasonably. This statute is, however, inapplicable because we can find no holding by the trial court that defendant acted unreasonably, a prerequisite for an award of attorney fees pursuant to § 3148. *Wood v DAIIE,* 413 Mich 573, 587; 321 NW2d 653 (1982).

Another provision of the no-fault act allows the exclusion of attorney fees from the setoff of payments received from specific types of tort claims.

A subtraction [for a recovery from a qualifying tort claim] shall be made only to the extent of the

---

[11] Apparently pursuant to 42 USC 406(a).

recovery, *exclusive of reasonable attorneys' fees* and other reasonable expenses incurred in effecting the recovery. [MCL 500.3116(2); MSA 24.13116(2).]

Clearly, the Legislature knows how to provide for the exclusion of attorney fees from offsetting payments gained in independent litigation. The fact that the Legislature did not provide a similar mechanism in § 3109(1) leads us to conclude that it did not intend that expenses such as attorney fees be recovered under that provision.

ii

There are also generally recognized exceptions to the common-law prohibition against awarding attorney fees. The plaintiff argues that one such exception, the "common fund" exception, controls this case. While this exception is recognized in Michigan, *Kelman, Loria, supra* at 503, it generally only applies when a prevailing party creates or protects a common fund that benefits itself as well as others. In such a case, courts of equity have traditionally held that it is unfair to allow others to benefit at the expense of the prevailing party without contributing to the costs incurred in securing the common fund.

The flaw in plaintiff's argument, however, is that no common fund was created because the social security benefits did not inure to the benefit of the defendant. Thus, the common fund exception is inapplicable.

Furthermore, the setoff required by § 3109(1) applies to benefits "provided or *required* to be provided under the laws of any state or the federal government . . . ." (Emphasis added.) As recently established in *Profit v Citizens Ins Co of America,* 444 Mich 281, 288; 506 NW2d 514 (1993), social

security disability benefits are "provided or required to be provided" under federal law and, therefore, must be set off from plaintiff's no-fault benefits.

Thus, even if plaintiff had foregone the effort of securing the disability benefits because they are "required" to be provided, they would have been subject to setoff regardless of the fact of actual receipt. Although the actual receipt of benefits by the claimant is significant, it is the amount provided or *required* to be provided that is determinative under § 3109(1). See *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634, 645-646; 344 NW2d 773 (1984) (opinion of Levin, J.), *Thompson v DAIIE,* 418 Mich 610, 619; 344 NW2d 764 (1984) (opinion of Levin, J.), and *Gregory v Transamerica Ins Co,* 425 Mich 625, 635; 391 NW2d 312 (1986).[12] Therefore, it is the entire amount of qualifying benefits provided, or required to be provided, by state or federal law on behalf of the claimant that determines the amount of actual setoff.

In sum, no common fund was created in this case because the social security disability benefits did not benefit the defendant. Plaintiff cannot argue that a common fund has been created when the benefits would have been set off in any event. Accordingly, we find no common-law exception, nor has our attention been directed to any statute or court rule that would allow plaintiff to shift the burden of his attorney fees to the defendant.

B

The mandatory setoff of benefits provided, or

---

[12] Although I wrote dissenting opinions in both *Gregory v Transamerica Ins Co,* and *Thompson v DAIIE,* I only disagreed with *which* benefits were subject to setoff, not with *how* qualifying benefits are set off.

required to be provided, by state or federal law is intended to prevent the recovery of benefits that duplicate benefits provided by the no-fault insurer, thereby preventing a double recovery. *Jarosz v DAIIE,* 418 Mich 565, 577; 345 NW2d 563 (1984); *O'Donnell v State Farm Mutual Ins Co,* 404 Mich 524, 544-545; 273 NW2d 829 (1979). By preventing claimants from receiving duplicate benefits, § 3109(1) is one of the methods utilized by the Legislature to help keep no-fault insurance affordable. *Id.* at 545. Allowing plaintiff to reduce the setoff by the amount of his attorney fees would give him a double recovery to the extent of those fees. He gets the benefit of having a legally incurred contractual debt discharged with no corresponding decrease in his no-fault benefits.

The fact that some of plaintiff's social security disability benefits were used to discharge a debt does not change the amount of social security benefits required to be provided by federal law on his behalf; it simply affects how that money is spent. Plaintiff is free to spend his money and discharge his debts as he chooses. His no-fault insurer will not be made to bear the consequences of those choices.[13]

---

[13] Under federal law, if an attorney does not properly request his fee, the entire amount of past-due benefits is paid directly to the claimant. 20 CFR 404.1730(c)(2)(i). Thereafter, the collection of the fee is a matter between the claimant and the attorney. 20 CFR 404.1730(c)(2)(ii).

Under the plaintiff's reading of § 3109(1), and in the unlikely event that an attorney did not request payment directly from social security, the entire amount of plaintiff's disability benefits, having been paid directly to him, would be subject to setoff. However, this would not change the fact that plaintiff's attorney has not yet been paid and that plaintiff will eventually have to satisfy that obligation.

According to plaintiff's argument, the timing of payment determines the amount that plaintiff's no-fault insurer will be able to set off. If payment is withheld directly from plaintiff's benefits, the insurer pays. If payment is made after plaintiff receives all of his benefits, plaintiff pays. This was surely not the intent of the Legislature, and we refuse to find the timing of payment determinative.

C

We conclude that the entire amount of plaintiff's social security disability benefits, including that amount paid directly to his attorney, is subject to setoff pursuant to § 3109(1). A contrary holding would allow plaintiff to shift the burden of his attorney fees in violation of the common law with no statutory or court rule authorization. Moreover, it would allow plaintiff a double recovery, to the extent of the attorney fees, because the disability benefits paid to his attorney discharged a legally incurred contractual debt of the plaintiff.

IV

The decision of the Court of Appeals is affirmed in part, and the case is remanded to the circuit court for proceedings consistent with this opinion.

BRICKLEY, BOYLE, RILEY, and GRIFFIN, JJ., concurred with CAVANAGH, C.J.

LEVIN, J. (*concurring in part and dissenting in part*). I concur in the majority's resolution of the question "whether a person working less than full-time is 'temporarily unemployed' as that term is used in MCL 500.3107a; MSA 24.13107(1) . . . ." *Ante*, p 463.

I write separately because I do not agree with the majority's resolution of the question "whether a claimant may subtract the amount of attorney fees paid to secure an award of social security disability benefits from the amount of those benefits subject to setoff pursuant to MCL 500.3109(1); MSA 24.13109(1)."[1] *Id.*, p 463.

---

[1] Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from

The "American rule" that "attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides to the contrary,"[2] would be applicable if Edward Popma, Jr., were seeking to recover attorney fees incurred in the prosecution of this litigation against Auto Club Insurance Association.

The question presented is not whether attorney fees are recoverable in an action between a no-fault insured and a no-fault insurer, but rather whether, when the Social Security Administration or, in another case, a worker's compensation insurer, rejects a no-fault insured's claim for benefits, "[b]enefits provided or required to be provided"[3] means the gross amount of benefits that a court or tribunal ultimately requires to be paid, or the amount actually provided and *received* by the no-fault insured net of the reasonable cost of recovery. That is a question of statutory construction, and the American rule is not applicable.[4] I would hold that in such a case, "[b]enefits provided or required to be provided" means the amount actually provided and received by the no-fault insured net of the reasonable cost of recovery.

In *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634; 344 NW2d 773 (1984), this Court held that benefits required to be paid to a worker injured in a motor vehicle accident as worker's compensation, but which would not be paid be-

the personal protection insurance benefits otherwise payable for the injury. [MCL 500.3109(1); MSA 24.13109(1).]

[2] *Ante,* p 474.

[3] See n 1.

[4] I agree with the majority, because the issue should be resolved as a matter of statutory construction, in rejecting Popma's argument that he should be reimbursed for the attorney fees, as an exception to the American rule, out of the "common fund" created when he was awarded social security benefits.

cause the employer did not have worker's compensation coverage, are not required to be subtracted from no-fault work-loss benefits. The lead opinion stated:

> Amounts payable as workers' compensation benefits that will not be paid to an injured worker because his employer failed to obtain workers' compensation coverage cannot duplicate no-fault work-loss benefits and are not required to be subtracted from no-fault work-loss benefits.[5] There cannot be a duplicative recovery where only a single recovery is available.[6] [*Id.,* p 641.]

Recently in *Smith v Physicians Health Plan, Inc,* 444 Mich 743, 746; 514 NW2d 150 (1994), this Court held, "as a matter of contract interpretation," that a no-fault insurer who has elected uncoordinated benefits under a no-fault policy is not entitled to receive duplicate payment for medical expense from a health insurer where the health insurer's policy contains a coordination of benefits clause.

I agree with the majority that

> [t]he mandatory setoff of benefits provided, or required to be provided, by state or federal law is intended to prevent the recovery of benefits that duplicate benefits provided by the no-fault insurer, thereby preventing a double recovery. *Jarosz v DAIIE,* 418 Mich 565, 577; 345 NW2d 563 (1984); *O'Donnell v State Farm Mutual Ins Co,* 404 Mich 524, 544-545; 273 NW2d 829 (1979). [*Ante,* pp 476-477.]

---

[5] *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 544; 273 NW2d 829 (1979); *Jarosz v DAIIE,* 418 Mich 565, 574-575; 345 NW2d 563 (1984). But see *Jarosz v DAIIE, supra,* p 592, n 13 (LEVIN, J., dissenting).

[6] See *Davis v Auto-Owners Ins Co,* 116 Mich App 402, 414; 323 NW2d 418 (1982) (quoting *Perez v State Farm Mutual Automobile Ins Co,* 105 Mich App 202, 208; 306 NW2d 451 [1981] [BURNS, J., dissenting]).

There is no duplicate recovery by a no-fault insured to the extent he incurs reasonable attorney fees to recover social security benefits or, in another case, worker's compensation benefits.

The majority appears to assume that Popma or his lawyer failed to avail themselves of an opportunity to obtain an award of attorney fees paid by the federal government. If that is so, I might agree with the majority, but I would not indulge that assumption absent record evidence that Popma or his lawyer failed to avail themselves of payment of the lawyer's fee by the federal government. It would be appropriate to remand for a factual determination.

MALLETT, J., concurred with LEVIN, J.