# STATE OF MICHIGAN

# COURT OF APPEALS

---

CHARLES E. ROSS,

        Plaintiff-Appellant,

and

VITAL COMMUNITY CARE, ADVANCED
PAIN SPECIALISTS, PLLC, SPECTRA
CLINICAL LAB, GET WELL MEDICAL
TRANSPORT, AFFILIATED DIAGNOSTICS OF
OAKLAND, LLC

        Intervening-Plaintiffs,

v

AUTO-OWNERS INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
December 4, 2018

No. 339005
Wayne Circuit Court
LC No. 15-016084-CK

---

Before: JANSEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Plaintiff appeals by delayed leave granted[1] the trial court's order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10) in this first-party no-fault action. We reverse and remand for proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

This appeal arises from a motor vehicle accident that occurred on November 23, 2014 in Detroit, Michigan. Plaintiff was traveling in a motor vehicle with two of his friends when their motor vehicle was hit by another motor vehicle after the other vehicle ran a stop sign. Plaintiff filed a three-count complaint against defendant, first alleging a count seeking personal protection insurance (PIP) benefits, as well as an additional count for breach of contract arising from the

---

[1] *Ross v Auto-Owners Ins Co*, unpublished order of the Court of Appeals, issued November 17, 2017 (Docket No. 339005).

-1-

non-payment of uninsured motorist benefits. In the third count of the complaint, plaintiff requested that the trial court order defendant to pay uninsured motorist benefits. According to plaintiff, defendant owed plaintiff "all medical bills reasonably incurred as well as loss of wages, attendant care and replacement services" after "wrongfully" refusing and neglecting to pay these benefits. In the complaint, plaintiff stated that at the time of the motor vehicle accident, he was insured with defendant as he was a "resident relative of his mother."

The pivotal issue in this appeal is whether the trial court correctly determined that genuine issues of material fact did not exist concerning plaintiff's alleged fraud where plaintiff maintained that he was employed at the time of the motor vehicle accident. The deposition testimony of both plaintiff and his employer, Cecil Clark, is determinative in this question. Plaintiff testified that he was working for BMT, Inc. ("BMT") at the time of the motor vehicle accident. According to plaintiff, he did a lot of "managing" for BMT, which owned Chita's Nefertiti Bar and Grill, and was responsible for opening and closing the bar, taking inventory, and taking orders for the party buses. Plaintiff worked 40 hours a week for BMT and was considered a full-time employee. Plaintiff earned $17.50 an hour at BMT. Plaintiff was also responsible for ordering liquor and beer, stocking these supplies and he would "be on the [party] buses on the weekends for the concerts and all that." In contrast, Clark testified that plaintiff was an independent contractor for BMT, and that at the end of the year he was given a 1099 form. Clark stated that plaintiff stopped working for BMT "around the summer of 2014[,]" but when questioned if August of 2014 was when plaintiff actually stopped working for BMT, Clark stated that the appropriate time frame was "[m]aybe October; September, October." Clark later clarified that plaintiff stopped working for BMT at the end of October 2014 and that he was not present at a company Thanksgiving dinner in November 2014. Clark also testified that plaintiff would self-report his hours working for BMT and that the staff at BMT also kept track of plaintiff's hours on a weekly basis on a "piece of paper[,]" not a time clock. In an affidavit filed subsequent to both he and Clark's deposition, plaintiff claimed that Clark may not have been aware that he was working for BMT because plaintiff's job duties often took him away from the bar for promotional work or to ride the company's party buses.

Defendant subsequently filed a motion for summary disposition pursuant to MCR 2.116(C)(10). As an initial matter, defendant contended that plaintiff's claims should be dismissed in their entirety because of plaintiff's fraud with regard to his wage-loss claim. Pointing to the fraud-exclusion clause in the no-fault policy, defendant asserted that where plaintiff had fraudulently misrepresented his dates of employment, plaintiff had violated the fraud-exclusion clause in the no-fault policy. In the alternative, defendant asserted that where any income plaintiff lost following the accident stemmed from his voluntary resignation from his place of employment, a causal link did not exist between the motor vehicle accident and plaintiff's resignation from his employer and plaintiff was precluded from seeking wage-loss benefits pursuant to MCL 500.3107(1)(b). In his response to the motion for summary disposition, plaintiff countered that the record did not contain any evidence of fraud on the part of plaintiff, and that genuine issues of material fact existed with regard to plaintiff's employment status at the time of the motor vehicle accident. Plaintiff characterized the issue as a "he said, she said" situation, and asserted that the apparent questions of fact and credibility ought to be reserved for the trier of fact. Following a hearing on defendant's motion, the trial court concluded that the record evidence established that plaintiff had engaged in fraud and it granted defendant's motion for summary disposition, dismissing plaintiff's PIP claims in their entirety as

-2-

well as plaintiff's claim for uninsured motorist benefits. Plaintiff now appeals by delayed leave granted.

## II. ANALYSIS

## A. PLAINTIFF'S ALLEGED FRAUD

On appeal, plaintiff claims that the trial court erred in granting summary disposition in favor of defendant on the basis of plaintiff's alleged fraud where the record yields genuine issues of material fact with respect to whether plaintiff was still working for BMT at the time of the motor vehicle accident. We agree.

In *Maiden v Rozwood*, 461 Mich 109, 118, 120; 597 NW2d 817 (1999), the Michigan Supreme Court set forth the applicable standard of review for a trial court's decision on a motion brought pursuant to MCR 2.116(C)(10):

> [The Court of Appeals] reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law. In making this determination, the Court reviews the entire record to determine whether defendant was entitled to summary disposition.
>
> * * *
>
> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.

In *Meemic Ins Co v Fortson*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 337728), lv pending, slip op at 2, this Court recently articulated the legal principles that govern when a party alleges that an insured has committed fraud:

> Generally, whether an insured has committed fraud is a question of fact for a jury to determine. See generally *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 658-660; 899 NW2d 744 (2017). However, under some circumstances, a trial court may decide as a matter of law that an individual committed fraud. See *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 425-426; 864 NW2d 609 (2014). In order to establish that an individual committed fraud, the insurer must establish (1) that the individual made a material misrepresentation, (2) that the representation was false, (3) that when the individual made the representation he or she knew it was false or made it with reckless disregard as to whether it was true or false, (4) that the misrepresentation was made with the intention that the insurer would act upon it, and (5) that the insurer acted on the misrepresentation to its detriment. *Titan Ins Co v Hyten,* 491 Mich 547, 555; 817 NW2d 562 (2012).

In this case, the no-fault policy at issue contains the following fraud-exclusion clause:

> We will not cover any person seeking coverage under this policy who has made fraudulent statements or engaged in fraudulent conduct with respect to procurement of this policy or to any occurrence for which coverage is sought.

In *Meemic*, the defendants were the parents of Justin Fortson, who was seriously injured while riding on the hood of a motor vehicle after the driver suddenly accelerated and turned. *Meemic*, ___ Mich App at ___; slip op at 1. Justin's parents provided attendant care for him, and submitted documentation evidencing that they did so around the clock, but a subsequent investigation by the plaintiff insurance company revealed that Justin had been incarcerated, was spending time with his girlfriend smoking marijuana and spending time in an in-patient rehabilitation facility at the times that his parents claimed to be caring for him. *Id*. at ___; slip op at 2. In that case, Justin's parents admitted being aware that Justin was incarcerated and spending time at an inpatient drug rehabilitation facility, and under such circumstances, this Court concluded that the record supported a conclusion that the defendant parents, who submitted attendant care documentation to the plaintiff representing that they had provided around the clock care to Justin, had engaged in a material misrepresentation. *Id*. at ___; slip op at 2-3. This Court reached that conclusion, particularly where "the payment requests were submitted with the intention that Meemic would rely on them and remit payment to [Justin's parents] for constant attendant care services, despite the fact that [Justin's parents] knew that they were not providing" such care to their son. *Id*. at __; slip op at 3.

Similarly, in *Bahri*, the no-fault policy at issue in that case contained a similar fraud-exclusion clause to the one at issue in this case. *Bahri*, 308 Mich App at 423-424. This Court concluded that the fraud exclusion clause operated to bar the plaintiff's claim seeking replacement services pursuant to the no-fault act where the services the plaintiff sought coverage for were initiated *before* the date of the motor vehicle accident. *Id*. at 425. In *Bahri*, the defendant also put forth surveillance evidence that showed the plaintiff, on numerous discrete occasions, performing actions that were "inconsistent with her claimed limitations." *Id*. at 426. Reasoning that the record evidence "belie[d] [the] plaintiff's assertion that she required replacement services," this Court concluded that "[r]easonable minds could not differ in light of this clear evidence that plaintiff made fraudulent misrepresentations for purposes of recovering PIP benefits." *Id*. As a result, the trial court's decision granting summary disposition in favor of the defendant was affirmed. *Id*.

More recently, in *Shelton*, this Court characterized the evidence of fraud in *Bahri* as "unrebutted" and noted that the evidence in *Shelton* revealed genuine issues of material fact with regard to the plaintiff's alleged fraud, observing that it did not rise to the level of what the Court was presented with in *Bahri*. *Shelton*, 318 Mich App at 655-656. In *Shelton*, the defendant had presented investigator reports and photographs countering the plaintiff's allegations of injuries and requirements of medical care. *Id*. at 658. This Court observed that many of the photographs at issue were blurred, and that the "subjects of the photographs so distant" that it was not possible to discern who was being photographed and what was occurring in the photographs. *Id*. In addition, the defendant's description of incidents in the investigative reports was inconsistent with the reports themselves, and this Court expressly stated that one instance where the plaintiff was observed "wringing out a shirt" did not controvert her allegation that she was not capable of

performing laundry without assistance. *Id*. at 658-659. The Court also rejected the defendant's contention that the plaintiff being seen without her back brace and bending over on two occasions established "beyond a question of fact that [the plaintiff] has defrauded [the] defendant." *Id*. at 659.

Plaintiff points to *Shelton* in his brief on appeal, arguing that it is supportive of his position that the fraud-exclusion policy in the present case is not applicable, given that he was not an insured under the no-fault policy. In *Shelton*, this Court concluded that "[t]he law governing application of the policy exclusion [regarding fraud] in *Bahri* [was] not applicable" where the plaintiff in *Shelton* was not an insured under the no-fault policy, but instead, the defendant was required to pay the plaintiff no-fault benefits pursuant to statute. *Id*. at 652. However, in *Shelton*, the plaintiff was a passenger in a motor vehicle driven by another individual when the accident at issue took place, and the plaintiff sought no-fault coverage from the driver's insurer, as she herself did not own a vehicle and did not reside with a relative who did. *Id*. at 651. Under such circumstances, this Court observed that "the exclusionary provision in [the] defendant's no-fault policy does not apply to [the plaintiff] and cannot operate to bar [her] claim." *Id*. at 653, 654-655. As the *Shelton* Court recognized, where the plaintiff in that case was not an individual named in the policy, a spouse of the person named in the policy, or a relative of either the person named in the policy or his spouse, the "defendant's policy [did] not 'apply' to [the plaintiff]" as set forth in MCL 500.3114(1).[2] In contrast, in this case, the parties do not dispute that plaintiff was an insured under defendant's no-fault policy where plaintiff was domiciled with his mother. Accordingly, plaintiff's reliance on *Shelton* for his argument that the fraud-exclusion clause is not applicable in this case is unavailing.

In any event, the record evidence, viewed in the light most favorable to plaintiff, *Maiden*, 461 Mich at 120, does indeed yield genuine issues of material fact with regard to whether plaintiff was working for BMT at the time of the motor vehicle accident. For example, plaintiff testified during his deposition that he worked for BMT at the time of the motor vehicle accident. According to plaintiff's deposition testimony, his work would take him on the party buses on the weekends. In the time preceding the motor vehicle accident, in October 2014, according to plaintiff's affidavit filed in this case, he was "doing a lot of promotions [for] the party buses" as Halloween approached. Plaintiff's work would take him away from the bar, and he would attend "many concerts and bar hopping events with the party bus" during that time period. Plaintiff was required to ride the party buses for the duration of the events, and, as part of his promotional work he would visit printers to make flyers and postcards and pass them out to bars and restaurants in the area, and post them on people's cars. In plaintiff's own words in his affidavit, "Cecil Clark may not have seen me much because my hours varied and, also, I was away from

---

[2] MCL 500.3114(1) provides that "[e]xcept as provided in subsections (2), (3), and (5), a personal protection insurance policy described in [MCL 500.3101(1)] applies to accidental bodily injury to the person named in the policy, the person's spouse, *and a relative of either domiciled in the same household*, if the injury arises from a motor vehicle accident. (Emphasis added.)

the bar doing the party buses; it was a very busy time of year." Plaintiff considered himself still employed by BMT at the time of the motor vehicle accident, he could make his own hours, and in plaintiff's opinion, Clark may have testified that plaintiff no longer worked for BMT because "we had just missed seeing each other whenever I was working."

In contrast, Clark's testimony on plaintiff's alleged termination from employment with BMT was certainly not unequivocal. For instance, Clark first testified that plaintiff left BMT "around the summer of 2014[,]" but later qualified his answer to reflect that plaintiff may have left in September or October of 2014. BMT did not keep employment records for plaintiff, once plaintiff was paid for his time any written record was destroyed by BMT staff. Clark conceded that he was not present every day that plaintiff worked. Clark also testified that plaintiff's scheduled "fluctuated each week[,]" and that his work would take him away from the bar on the party buses. Plaintiff was not formally discharged from his employment with BMT, and Clark agreed that plaintiff's employment "trailed off" when plaintiff stopped reporting to work in September or October of 2014. Clark further waffled on the timing of plaintiff leaving employment with BMT, agreeing that plaintiff left before Thanksgiving 2014, but "[n]ot too much more before that." While Clark could not recall exactly how far in advance of Thanksgiving 2014 that plaintiff had left BMT's employment, he later clarified that it was "at least 30 days before[,]" and that plaintiff left BMT "sometime at the end of October[.]" A genuine issue of material fact exists when "reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgnmt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). After reviewing the testimony of both Clark and plaintiff, as well as plaintiff's statement in his affidavit, reasonable minds could certainly differ on the issue with respect to whether plaintiff was working for BMT at the time of the motor vehicle accident. *Id*. Consequently, where a review of the record evidence does not support, as a matter of law, a determination that plaintiff made a false material representation to defendant with regard to his employment tenure with BMT, the trial court erred in granting summary disposition in favor of defendant. *Meemic*, ___ Mich App at ___; slip op at 2.

Moreover, in ruling on defendant's motion, the trial court observed that aside from plaintiff's affidavit and deposition testimony, written documentation did not support plaintiff's assertions that he was working for BMT at the time of the motor vehicle accident. However, where plaintiff submitted admissible evidence in compliance with the court rules in response to defendant's motion, the trial court erroneously held that summary disposition was appropriate. For example, MCR 2.116(G)(4) provides that once a motion brought pursuant to MCR 2.116(C)(10) "is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." In compliance with MCR 2.116(G)(6), plaintiff produced an affidavit, as well as deposition testimony, both of which would be "admissible as evidence" to deny the grounds stated in defendant's motion. Under such circumstances, the trial court's conclusion that plaintiff did not present evidence demonstrating a genuine issue of material fact for trial was incorrect. Additionally, to the extent that the trial court clearly found Clark to be a more credible witness on the issue of plaintiff's employment with BMT, a trial court is not permitted to "make credibility determinations[ ]" in the context of deciding a motion for summary disposition. *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 68-69; ___ NW2d ___ (2018).

This case is also distinguishable from yet another recent case from this Court, *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772; 910 NW2d 666 (2017), where, in the context of determining whether the plaintiff had committed a "fraudulent insurance act" as set forth in MCL 500.3173a(2), this Court held that genuine issues of material fact did not exist concerning this issue where the plaintiff had submitted calendars in support of his claim for replacement services that were fraudulent. *Id*. at 776, 777, 781. This Court reached this conclusion where the record reflected that the plaintiff was indeed aware that the calendars submitted were incorrect, and counsel for the plaintiff conceded in the trial court that the plaintiff had forged his brother's name to the calendars. *Id*. at 781. Additionally, the record reflected that the plaintiff had moved to another city to live with his girlfriend at the time that his brother was alleged to have been caring for him according to the calendars. *Id*. Under such circumstances, this Court determined that "[n]o reasonable jury could conclude that plaintiff, despite the presence of any head injury, was not aware that he was submitting false information that was material to his claim for no-fault benefits." *Id*. at 781-782. Unlike in *Candler* and *Bahri*, the instant case is not one where the record evidence establishes, as a matter of law, that plaintiff engaged in fraud. Consequently, where a review of the record evidence in the light most favorable to plaintiff reveals that genuine issues of material fact exist concerning whether plaintiff's statements regarding his employment tenure with BMT were fraudulent, the trial court erred in granting summary disposition in favor of defendant.

B. MCL 500.3107

Plaintiff also argues that the trial court should not have granted defendant's motion for summary disposition with regard to his claim for wage-loss benefits because genuine issues of material fact exist regarding whether plaintiff's loss in income is causally linked to the motor vehicle accident. We agree.[3]

Plaintiff's argument implicates MCL 500.3107(1)(b), which provides, in pertinent part, as follows:

(1) Except as provided in subsection (2), personal protection insurance benefits are payable for the following:

(b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured.

In *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 466; 521 NW2d 831 (1994), the Michigan Supreme Court recognized that "[t]he provisions governing the award of work-loss benefits [in the no-fault act] are contingent on the employment status of the claimant at the time of the accident." In accordance with MCL 500.3107(1)(b), a claimant's recovery is also

---

[3] While the trial court did not squarely address this issue in its bench ruling, we may consider this issue where it involves a question of law and the necessary facts have been presented. *Smith v Foerster-Bolser Const, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006).

confined to "what he would have earned had he not been involved in the [motor vehicle] accident." *Popma*, 446 Mich at 463. Additionally, to qualify for benefits pursuant to MCL 500.3107(1)(b), an individual "must actually be employed at the time of the accident[.]" *Popma*, 446 Mich at 468.

> Importantly, the statutory language requires that work-loss damages consist of lost income from "work an injured person *would have* performed." We explained in *MacDonald v State Farm* [419 Mich 146, 152; 350 NW2d 233 (1984)] that "work-loss benefits compensate the injured person for income he would have received but for the accident." Thus, work-loss damages are only available if the accident was the "but for" cause—i.e., cause-in-fact—of the work loss. [*Hannay v MDOT*, 497 Mich 45, 80; 860 NW2d 67 (2014).]

As an initial matter, recognizing that his motor vehicle accident must be the "but for" cause of his wage loss, *id.*, plaintiff points out that genuine issues of material fact exist for the factfinder to resolve concerning whether he was working for BMT on the day of the motor vehicle accident. For the reasons set forth in our analysis with regard to plaintiff's alleged fraud, we agree with plaintiff's assertion that genuine issues of material fact do exist regarding whether plaintiff worked for BMT on the day of the motor vehicle accident and summary disposition of plaintiff's wage-loss claim was improper.

## III. CONCLUSION

We reverse the trial court's grant of summary disposition to defendant with regard to all claims and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello