GOOLSBY v CITY OF DETROIT

GOOLSBY v MICHIGAN DISTRICT COUNCIL 77 AND LOCAL 26,
AMERICAN FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES, AFL-CIO

Docket Nos. 164133, 164260. Submitted April 6, 1995, at Detroit.
    Decided May 26, 1995, at 9:20 A.M. Leave to appeal sought.

    Embritt Goolsby and other sanitation workers in the environmen-
    tal protection and maintenance department of the City of
    Detroit filed in the Michigan Employment Relations Commis-
    sion charges of unfair labor practice by the city and their
    union, Michigan District Council 77 and Local 26, American
    Federation of State, County and Municipal Employees. The
    charging parties alleged that the city improperly had influ-
    enced union affairs to the detriment of the charging parties and
    that the union had breached its duty of fair representation by
    failing to pursue grievance procedures. The charges related to a
    change negotiated by the union and the city that required all
    sanitation workers to be able to perform the duties of garbage
    truck crews. The charging parties, who had worked in light-
    duty jobs before the change, failed to physically qualify for
    garbage truck duty and were retired, placed on worker's com-
    pensation, or otherwise separated from employment with the
    city. The commission adopted a recommendation by a hearing
    referee to dismiss the charges, concluding that there was
    insufficient evidence that the union's handling of the griev-
    ances had been discriminatory or that the city improperly had
    influenced union affairs. The Court of Appeals, HOLBROOK, JR.,
    P.J., and BRENNAN and S. EVERETT, JJ., affirmed in an unpub-
    lished opinion per curiam, decided September 19, 1980 (Docket
    Nos. 47162, 47163). The Supreme Court reversed, holding that
    the union had breached its duty of fair representation. 419
    Mich 651 (1984). The Supreme Court remanded the matter to
    the commission for a determination of relief due the charging
    parties. After further hearings before the referee, the commis-
    sion adopted the referee's findings that the city had not

REFERENCES
Am Jur 2d, Labor and Labor Relations §§ 2810, 3697, 3698.
See ALR Index under Labor and Employment.

breached the collective bargaining agreement or committed an unfair labor practice and that the charging parties were not entitled to damages from the union because they had not suffered harm from the union's breach of its duty of fair representation. The commission, however, ordered the union to pay the charging parties' attorney fees and costs. The charging parties appealed, and the union cross appealed. The appeals were consolidated.

The Court of Appeals *held:*

1. The commission's finding that there was an unambiguous contractual agreement between the union and the city that all sanitation workers were to be physically qualified to perform all the duties imposed under the sanitation laborer classification was supported by competent, material, and substantial evidence on the record.

2. The commission did not commit an error of law in ruling that the city had not breached a provision in the collective bargaining agreement stating that conditions and practices of employment beneficial to the employees before the execution of the agreement would be maintained during the term of the agreement, that the charging parties were not handicapped and their separation from employment had not violated provisions in the collective bargaining agreement or in city ordinances proscribing discrimination against the handicapped, that the city had not violated a provision in the collective bargaining agreement concerning employees' preferences for shifts and locations, and that, in light of the change negotiated by the union and the city, the city's past practice of permitting sanitation workers physically unable to work in garbage truck crews to perform light duty had not given rise to a term or condition of employment that was breached.

3. The commission did not commit an error of law in ruling that the charging parties were not entitled to damages from the union. The charging parties failed to establish a breach of the collective bargaining agreement along with the breach of the duty of fair representation.

4. No authority exists under the public employment relations act, MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.*, other statutes, court rules, or recognized common-law exceptions, for an award of attorney fees and costs to the charging parties. The commission's award of attorney fees and costs to the charging parties is reversed.

Affirmed in part and reversed in part.

D.C. KOLENDA, J., did not participate in that portion of the decision regarding attorney fees and costs.

LABOR RELATIONS — UNFAIR LABOR PRACTICES — PUBLIC EMPLOYMENT
   RELATIONS ACT — ATTORNEY FEES — COSTS.
   An award of attorney fees or costs to a party that prevails in a
      proceeding in the Michigan Employment Relations Commission
      concerning a charge of unfair labor practice by a union or a
      public employer is not authorized under the public employment
      relations act, other statutes, court rules, or recognized excep-
      tions to the common law (MCL 423.201 *et seq.*; MSA 17.455[1]
      *et seq.*).

*Anderson, Anderson & Associates* (by *Herman J. Anderson* and *Richard R. Harris*), for Embritt Goolsby and others.

*William G. Ashworth,* Assistant Corporation Counsel, for City of Detroit.

*Miller, Cohen, Martens, Ice & Geary, P.C.* (by *Renate Klass*), for AFSCME.

Before: CAVANAGH, P.J., and JANSEN and D. C. KOLENDA,* JJ.

JANSEN, J. The charging parties appeal as of right from an April 16, 1993, decision and order on remand of the Michigan Employment Relations Commission in Docket No. 164133. In Docket No. 164260, the American Federation of State, County and Municipal Employees (AFSCME) cross appeals from the decision of the MERC to award attorney fees and costs to the charging parties. We affirm in part and reverse the award of attorney fees and costs to the charging parties.

This case has a long history. The charging parties belonged to a group of sanitation workers, known as "white wingers," within the Environmental Protection and Maintenance Department of the City of Detroit. They wore white uniforms and their duties consisted of picking up refuse

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

from city streets with a hand shovel and broom and placing it in white wheeled barrels that they pushed. This position was considered a light-duty job and, before the summer of 1975, the city normally assigned the duty to individuals who were physically unable to work on the garbage truck crews. The charging parties were represented exclusively by the AFSCME.

In 1973, the city and the AFSCME negotiated changes in the sanitation laborer classification. Under the agreement, sanitation laborers were all subject to the same job duties. The agreement included a fifteen cent an hour pay raise in exchange for the understanding that all sanitation laborers would be expected to perform all duties in their classification.

In the summer of 1975, the city ordered the white wingers to submit to physical examinations to determine if they were physically able to perform the duties required of sanitation laborers. None of the white wingers were found to be capable of the strenuous work behind the trucks. All of the charging parties in this case were either retired, placed on worker's compensation, or otherwise separated from employment because of their inability to meet the physical requirements of working behind the garbage trucks.

On September 30, 1975, the AFSCME instituted grievance proceedings on behalf of the charging parties. The first two steps of the grievance procedure were waived and, on October 9, 1975, the grievances were denied at the third step by the City Commission Administrative Coordinator. The grievances were not appealed to the fourth step within the fifteen-day period provided under the grievance procedure of the collective bargaining agreement.

On February 17, 1976, the charging parties filed

charges of unfair labor practice against the AFSCME, alleging breach of the duty of fair representation (for failure to pursue the grievance procedure) and against the city, alleging that the city had improperly influenced union affairs to the charging parties' detriment. A hearing referee found that the failure to process the grievance was without explanation, but not an unfair labor practice, and recommended dismissal of the action. On August 11, 1979, the MERC adopted the recommendation, finding insufficient evidence to prove that the AFSCME's handling of the grievance was discriminatory or that the city affected its handling. This Court affirmed the decision of the MERC. *Goolsby v Detroit,* unpublished opinion per curiam of the Court of Appeals, decided September 19, 1980 (Docket Nos. 47162, 47163).

The Supreme Court reversed the judgment of the Court of Appeals, holding that the charging parties did not have to show bad faith on the part of the union to establish a breach of the duty of fair representation due to arbitrary conduct. *Goolsby v Detroit,* 419 Mich 651, 678; 358 NW2d 856 (1984). The Supreme Court held that the union's inexplicable failure to comply with the grievance procedure time limits indicated inept conduct undertaken with little care or with indifference to the interests of the charging parties, which could have been reasonably expected to foreclose the further pursuit of grievances by the charging parties and that, as a result, the union breached its duty of fair representation to the charging parties. *Id.,* p 682. The Supreme Court then remanded the matter to the MERC for a determination of relief due.

On April 18, 1985, the MERC remanded the matter for a full evidentiary hearing before the hearing referee. On June 30, 1992, the referee filed his

decision and recommended order. The referee found that the city did not violate the collective bargaining agreement with the AFSCME and, because there was no underlying breach of the contract, the charging parties suffered no harm from the AFSCME's failure to pursue the grievance and were entitled to no money damages.

On April 16, 1993, the MERC filed its decision and order on remand and adopted the referee's finding that the city did not breach the collective bargaining agreement or commit any unfair labor practice. The MERC also ordered the AFSCME to pay the charging parties' attorney fees and costs of $20,000.

I

The charging parties first argue that the MERC's factual finding that there was an unambiguous agreement between the AFSCME and the city in 1973 that all sanitation laborers must be physically qualified to work behind a truck is not supported by any evidence in the record. The MERC's findings of fact are conclusive if supported by competent, material, and substantial evidence on the whole record. MCL 423.216(e); MSA 17.455(16) (e). In reviewing the factual findings of the MERC, due deference must be accorded to its administrative expertise. *Amalgamated Transit Union, Local 1564, AFL-CIO v Southeastern Michigan Transportation Authority,* 437 Mich 441, 450; 473 NW2d 249 (1991). Reviewing courts should not invade the fact-finding province of the administrative agency by displacing an agency's choice between two reasonably differing views of the evidence. *Id.*

Effective April 2, 1973, the collective bargaining agreement provided in relevant part regarding the class title of sanitation laborer:

DUTIES STATEMENT: Under supervision, to perform the strenuous physical labor involved in refuse collection requiring the daily completion of assigned standardized refuse routes; and to perform related work as required.

Contrary to the charging parties' contention, this provision does not apply only to new hires. This provision clearly states that all sanitation laborers are required to perform strenuous physical labor. Further, the sanitation workers were to receive an increase of fifteen cents an hour in exchange for the fact that they performed physical labor more strenuous and dangerous than that performed by the average city laborer.

Further, there is the testimony of Cornelius Hudson, the president of Local 26, that he explained at a union meeting attended by the sanitation laborers that the extra fifteen cents an hour would be given only upon union agreement that all sanitation laborers would perform all the duties of a sanitation laborer. He stated that this was thoroughly explained to the members and the members voted in agreement.

Accordingly, we conclude that the MERC's factual finding that there was an unambiguous contractual agreement between the AFSCME and the city in 1973 that all sanitation laborers were to be physically qualified to perform all the duties of the sanitation laborer classification is supported by competent, material, and substantial evidence on the whole record.

II

The charging parties next argue that the MERC's conclusion that the city did not breach the collective bargaining agreement is an error of law. Legal rulings of an administrative agency are set

aside if they are in violation of the constitution or a statute or are affected by a substantial and material error of law. MCL 24.306(1)(a), (f); MSA 3.560(206)(1)(a), (f); *Amalgamated Transit Union, Local 1564, supra,* p 450.

First, we find that the MERC's decision that the maintenance-and-conditions clause of the collective bargaining agreement was not breached by the city was not an error of law. The clause provided:

> Conditions of employment and current proper practices which are beneficial to the employees at the execution of this Agreement . . . shall . . . be maintained during the term of this Agreement. Changes must be mutually agreed upon by the City and the Union.

The parties negotiated for the change in classification, the job description, and the additional hourly wage. They reached a mutual agreement that required all sanitation laborers to be able to perform all the duties of the job classification. Thus, the change was mutually agreed upon by the city and the AFSCME.

Next, the MERC's decision that the charging parties were not handicapped within the definition of the collective bargaining agreement is not an error of law. The charging parties were found to be unable to safely perform the work involved in the job of sanitation laborer. The parties had negotiated for a change in the classification and the establishment of duties and responsibilities for all sanitation workers. The charging parties' separation from employment was not in violation of any provision of the collective bargaining agreement or city ordinances, which are in conformance with state law concerning handicap discrimination. MCL 37.1103(e)(i)(A); MSA 3.550(103)(e)(i)(A); *Merillat v Michigan State Univ,* 207 Mich App

240, 244; 523 NW2d 802 (1994) (the handicap must be unrelated to the person's ability to perform the duties of the particular job).

Next, we find that the MERC's finding that the shift-and-location-preference clause was not violated was not an error of law. This clause states:

> Within sixty (60) days of the signing of this Agreement, employees in each unit covered by this Agreement will be allowed to select shifts and work locations in accordance with their seniority within the department within their classifications, insofar as it does not adversely affect the operation of the department.
> The job location . . . will be considered the employee's basic job for the duration of this Agreement.

None of the charging parties were white wingers because of seniority and they did not claim that they were denied seniority rights. Thus, there is no evidence that the city violated this provision.

Last, the charging parties claim that the city was required to follow the past practice of permitting those sanitation laborers who were physically unable to work behind the trucks to perform white-winger duties exclusively. The inquiry whether a past practice has given rise to a term or condition of employment is not limited to the consideration of the consistency and duration of the practice itself. *Amalgamated Transit Union, Local 1564, supra,* p 455. Other relevant considerations include whether the parties have bargained regarding the subject or dealt with it in the collective bargaining agreement. *Id.* The nature of the practice, its duration, and the reasonable expectations of the parties may justify its attaining the status of a term or condition of employment. *Id.*

The MERC did not make an error of law in

concluding that the past practice of permitting sanitation laborers with physical limitations to avoid truck detail had been changed by negotiation and agreement of the parties. Thus, the city did not breach the collective bargaining agreement by enforcing the agreed-upon requirement that all sanitation laborers be able to perform all the duties within the job classification.

III

The charging parties next argue that the MERC erred in failing to award them damages. We find that the MERC's legal ruling in this regard is not an error of law.

To prevail on a claim of unfair representation, a charging party must establish a breach of the union's duty of fair representation and also a breach of the collective bargaining agreement. *Knoke v East Jackson Public School Dist,* 201 Mich App 480, 488; 506 NW2d 878 (1993); *Martin v East Lansing School Dist,* 193 Mich App 166, 181; 483 NW2d 656 (1992). Here, it was established by the Supreme Court's decision in *Goolsby* that the union had breached its duty of fair representation. However, as previously discussed, the charging parties have not established a breach of the collective bargaining agreement. Accordingly, the MERC did not err in determining that no damages were due the charging parties.

IV

In their last issue, the charging parties argue that the MERC's order for the AFSCME to pay them attorney fees and costs in the amount of $20,000 is not supported by competent, material, and substantial evidence on the whole record. The charg-

ing parties contend that they should have received significantly more than $20,000. For the reasons set forth below, we reverse the order granting the charging parties attorney fees and costs.

In the cross appeal, the AFSCME argues that the MERC committed an error of law when it awarded attorney fees and costs to the charging parties. We hold that, pursuant to the public employment relations act (PERA), MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.*, there is no authority for the award of attorney fees.

In Michigan, the recovery of attorney fees is governed by the "American rule." *Popma v Auto Club Ins Ass'n,* 446 Mich 460, 474; 521 NW2d 831 (1994); *Burnside v State Farm Fire & Casualty Co,* 208 Mich App 422, 426; 528 NW2d 749 (1995). Under this rule, attorney fees are not recoverable unless authorized by statute, court rule, or a recognized common-law exception. *Popma, supra,* p 474.

Nowhere in the PERA is there any specific language authorizing the award of attorney fees. We acknowledge that two prior panels of this Court have held that the PERA authorizes the award of attorney fees under MCL 423.216(b); MSA 17.455(16)(b). *Amalgamated Transit Union v Detroit,* 150 Mich App 605, 607; 389 NW2d 98 (1985); *Hunter v Wayne-Westland Community School Dist,* 174 Mich App 330, 337; 435 NW2d 483 (1989). Under § 16(b), the MERC has the power "to take such affirmative action . . . as will effectuate the policies of this act." We disagree with *Amalgamated Transit Union* and *Hunter* that this phrase is specific enough to authorize an award of attorney fees under the PERA. In this regard we agree with Judge MICHAEL J. KELLY's opinion, dissenting in part in *Hunter, supra,* p 338, that § 16(b) does not authorize the MERC to grant attorney fees to a prevailing party.

The charging parties and the MERC relied on *Dutrisac v Caterpillar Tractor Co,* 749 F2d 1270 (CA 9, 1983), as authority for an award of attorney fees. The court held that the award of attorney fees, although not authorized by the National Labor Relations Act or any contractual provision, did not violate the American rule because the award of attorney fees represented damages, rather than an award of attorney fees per se. *Id.,* pp 1275-1276. The court's conclusion in that regard appears to be somewhat strained and we are not bound by the decision of a federal court. We reject the court's decision in *Dutrisac* that the recovery of attorney fees, as an award of damages, does not violate the American rule.

In this case, we are unable to find any authority under the PERA or under any court rule that would authorize the award of attorney fees. Further, the decisions in *Amalgamated Transit Union* and *Hunter* are not common-law exceptions to the American rule because both of those decisions relied on the PERA as authority for the award of attorney fees. We believe those cases were incorrectly decided because the PERA does not specifically authorize the award of attorney fees and we decline to follow them.

Accordingly, we hold that the MERC erred in ruling that the charging parties were entitled to an award of attorney fees, because there is no statutory authority to award attorney fees. Therefore, we reverse the award of attorney fees and costs.

Affirmed in part and reversed in part.


D.C. KOLENDA, J., did not participate with regard to part IV of the opinion.