# STATE OF MICHIGAN

# COURT OF APPEALS

DUNCAN P. HOWARD,

Petitioner-Appellee,

v

CIVIL SERVICE COMMISSION,

Respondent-Appellant.

UNPUBLISHED
June 21, 2016

No. 326543 & 328099
Ingham Circuit Court
LC No. 14-010466-AA

Before: MARKEY, P.J., and OWENS and BOONSTRA, JJ.

PER CURIAM.

Respondent Civil Service Commission appeals by leave granted the circuit court's order of March 2, 2015, reversing its denial of petitioner's grievance pertaining to the Department of Corrections' (DOC) abolishing the position of assistant director of the DOC's bureau of health care services (BHCS) (Docket No. 326543). Respondent also appeals by leave granted the circuit court's order of June 8, 2015, awarding petitioner costs and attorney fees (Docket No. 328099). This Court ordered the two appeals consolidated. We reverse.

## I. FACTS AND PROCEEDINGS

Petitioner Howard was the assistant director of the BHCS within the DOC, a level-18 position. In April 2011, petitioner was told that his position would be abolished. Petitioner testified that on April 28, 2011, he received a voice mail from his direct supervisor, Lynda Zeller: "Hi. This is Lynda Zeller. I'm just calling to tell you your position is abolished." Petitioner contacted the DOC's human resources director to discuss options of exercising his "bumping" rights to a level-14 position or taking a demotion to a level-15 position. Petitioner volunteered to take the level-15 administrative position with the DOC in July 2011. The DOC abandoned or assigned the assistant director duties to other employees.

Plaintiff filed his initial grievance with respondent on May 2, 2012, alleging that "the abolishment of my position was not for reasons of administrative efficiency." Specifically, he asserted that Zeller and others had conspired to make him the "scapegoat" for problems uncovered by a pharmaceutical audit.

Respondent held a hearing on August 14, 2012, to determine whether petitioner timely filed his grievance. The DOC's former deputy director of operations and support, Gary Manns, testified that he was at a meeting with DOC's director, Richard McKeon, concerning McKeon's

-1-

appearance before a legislative committee regarding the findings of the pharmaceutical audit. Zeller and her supervisor, Denny Straub, were present. Manns testified that Zeller expressed a desire during this meeting to "scapegoat" someone for the problems uncovered by the audit and that she mentioned petitioner's name. Petitioner testified that he met with Straub on June 8, 2011, and Straub told him that Zeller had "thrown [petitioner] under the bus." According to petitioner, Straub indicated that there would be an investigation, and if petitioner were exonerated, he would get his position back. Petitioner stated that he received a letter from Internal Affairs in November 2011 exonerating him, but by that time Straub had left the DOC. He then unsuccessfully requested a meeting with then DOC Director Dan Heyns. Instead, petitioner testified that he received a letter discussing his misconduct with respect to the pharmaceutical audit. Petitioner then discovered that there was no document in his personnel file about his former level 18 position being abolished.

Respondent's hearing officer issued an interim decision on September 19, 2012. The hearing officer found it unusual that there was no paperwork indicating the exact date the position was abolished, which led him to have civil service staff review the human resources management network (HRMN) to determine whether the position was abolished and on what date. The hearing officer determined that the HRMN showed that the level 18 position that petitioner formerly occupied was not abolished, remained active, and could be filled by the DOC if it so chose. The hearing officer concluded that because the DOC "engaged in 'an intentionally or fraudulently misleading action . . . that prevented the filing' " of the grievance in a timely fashion, petitioner's late filing was justified. The hearing officer ruled that a hearing on the merits of petitioner's grievance would be held concerning whether petitioner was "demoted for disciplinary reasons?" and if so, "was the disciplinary demotion for just cause?"

The DOC appealed this interim decision to respondent's Employment Relations Board (ERB), which issued a decision on December 18, 2012 overturning the hearing officer's interim decision. The ERB held that the hearing officer's conclusion that a recording in the HRMN system, which is administered by respondent, was a necessary step in abolishing a position violated Const 1963, art 11, § 5, which provides that appointing authorities may abolish positions for reasons of administrative efficiency without respondent's approval. The ERB explained that deactivation of a position on the HRMN is an administrative function that cannot always be accomplished when a position is abolished because abolished positions often share the same position code as non-abolished positions; consequently, deactivating the abolished position would also deactivate a non-abolished position. The ERB concluded that petitioner's grievance "did not claim that he was demoted and there is no authority for the [hearing officer] to rewrite a grievance appeal to insert new claims." The ERB vacated the portions of the hearing officer's interim decision that found petitioner's position was not abolished and that petitioner was demoted and remanded the matter for a hearing on the merits of petitioner's grievance. During the subsequent grievance hearing, the hearing officer told the parties the issue was whether petitioner's position was abolished for reasons other than administrative efficiency.

Steven Marschke testified that while he was working as an administrator of Internal Affairs at the DOC he was present at a meeting with McKeon where an auditor general report on overages in healthcare expenses were addressed. Marschke testified that an employee of his, investigator Steve Wendry, who was also present at the meeting, told Marschke after the meeting that "they want to fire" petitioner.

McKeon testified that he served as director of the DOC from January 2011 until June or July of that year. McKeon testified that at the time the DOC had a shortage of $42 to $45 million. McKeon testified that he was given the task of cutting $200 million from the DOC's budget and that the only way to do this was to close prisons and lay people off. McKeon testified that he made the decision to abolish petitioner's position because in his experience, regional health administrators reported to the healthcare administrator in the central office. So he determined that petitioner's position was not needed. McKeon stated that he decided to abolish petitioner's position in January or February of 2011.

Tony Lopez, the DOC Human Resources Director during McKeon's tenure as director, recalled learning that petitioner's position would be abolished in 2011 when he got a list from McKeon and when Straub and Manns told him that petitioner would be contacting him. Lopez testified that when petitioner contacted him, he told petitioner that if chose to "bump" he would go to a departmental manager 3 (level 14) position. Lopez stated that petitioner asked him if there were any alternatives. Lopez informed petitioner that it might be possible to be appointed to a SAM-1 position (level 15) in Ionia for a smaller pay cut, but that he would have to be appointed to the position as he could not "bump" into it. Lopez testified that in May 2011, petitioner sent him an e-mail requesting placement in the SAM-1 position. In an e-mail dated May 18, 2011, petitioner states that he would accept the SAM-1 position as "the lesser of all evils involved." Lopez explained that petitioner's taking this position resulted in his not receiving notice that his position was abolished because by taking the SAM-1 position, petitioner was neither laid off nor did he exercise a "bump," the two situations that would trigger a notice.

The hearing officer concluded, however, that a reasonable person in petitioner's position likely would have drawn the conclusion that petitioner did, i.e., that he had been the scapegoat of the pharmaceutical audit. Nevertheless, the hearing officer concluded that the evidence showed that massive cuts in DOC personnel were necessary and that McKeon had identified petitioner's position as one to be abolished before he had any discussions with Zeller about petitioner. The hearing officer specifically credited McKeon's testimony that he found petitioner's position to be redundant and that it was abolished for reasons of administrative efficiency.

Petitioner appealed to the ERB, which concluded that the hearing officer did not err in concluding that petitioner had not shown that his position was abolished "for reasons other than administrative efficiency." The ERB found that the "evidence supports the [hearing officer's] conclusion that [petitioner] voluntarily accepted the 15-level position to minimize his pay reduction due to the abolishment of his 18-level position." On July 14, 2014, respondent approved the recommendations of the ERB and adopted them as its final decision. Petitioner then filed this action in the Ingham Circuit Court.

During oral argument, the circuit court repeatedly asked respondent's counsel whether any document existed explicitly stating that petitioner's position had been abolished. Respondent's counsel eventually conceded that there was not. The circuit court told respondent's counsel that it did not understand how a position could be abolished without any documentation at all. The circuit court also reasoned that "nothing . . . shows that getting rid of this job made things work better or saved a lot of money other than just getting rid of it." Ultimately, the court found "that there is not competent, material, or substantial evidence on the record to support the finding that Petitioner's position was actually abolished." The circuit court

determined that petitioner was entitled to written notification his position had been abolished regardless of whether he transferred to a new position or exercised employment preference or bumping rights. The circuit court reversed respondent's final decision, ordered that petitioner be reinstated to his level 18 position with back pay, and awarded "attorney fees and costs pursuant to MCR 2.625."

After petitioner filed his bill of costs and fees, respondent objected. A hearing was held where the circuit court reiterated its belief that the DOC had egregiously manipulated Civil Service rules. The circuit court stated that attorney fees should be awarded under "the 7.11" (presumably MCR 7.115). The circuit court later entered an order granting petitioner all the costs and attorney fees listed in his bill of costs.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

"We review a circuit court's decision on an administrative appeal to determine whether the circuit court applied correct legal principles and whether the court misapprehended or grossly misapplied the substantial-evidence test to the agency's factual findings, which essentially constitutes a clearly erroneous standard of review." *Nason v State Employees Retirement Sys*, 290 Mich App 416, 424; 801 NW2d 889 (2010).

A court's decision to award attorney fees is reviewed for an abuse of discretion. *Ewald v Ewald*, 292 Mich App 706, 724; 810 NW2d 396 (2011). The circuit court abuses its discretion when its decision is outside the range of reasonable and principled outcomes. *Id*. at 725.

### B. ADMINISTRATIVE DECISION

All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. . . . [Const 1963, art 6, § 28.]

This standard applies to review of final decisions issued by the Civil Service Commission. *Parnis v Civil Serv Comm*, 79 Mich App 625, 628; 262 NW2d 883 (1977).

The phrase "authorized by law" means "allowed, permitted, or empowered by law." *Northwestern Nat'l Cas Co v Comm'r of Ins*, 231 Mich App 483, 488; 586 NW2d 563 (1998). Thus, "an agency's decision that is in violation of statute or constitution, in excess of the statutory authority or jurisdiction of the agency, made upon unlawful procedures resulting in material prejudice, or is arbitrary and capricious, is a decision that is *not* authorized by law." *Id.* (citation, quotation marks and brackets omitted). "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision." *Tumble's Rent-L-Center, Inc v Employment Security Comm*, 197 Mich App 229, 233; 495 NW2d 180 (1992). "Reviewing

courts should not invade the fact-finding province of the administrative agency by displacing an agency's choice between two reasonably differing views of the evidence." *Goolsby v Detroit*, 211 Mich App 214, 219; 535 NW2d 568 (1995).

The parties disagree as to whether the dispositive issue should solely center on whether petitioner's position was abolished for reasons other than administrative efficiency as respondent contends, or whether it should also include an analysis of whether petitioner's position was actually abolished, as petitioner contends. This disagreement is in reality little more than a debate over differing versions of the facts.

The circuit court's conclusion that petitioner's position was not actually abolished stemmed primarily from petitioner's contention that because there was no written document that specifically stated that the position was abolished, there is no evidence it had been abolished. The ERB countered that conclusion and instead explained that the reason no written notice was given to petitioner was because he chose to be appointed to the SAM-1 position and not go through the employment preference process, which would have triggered the abolition notice.

During oral arguments before the circuit court, respondent's counsel did acknowledge that no document specifically stated that respondent's position would be abolished. Petitioner's position was identified on the FY 2011 Spending Plan as one facing abolishment, but McKeon acknowledged that several other positions similarly identified within the document had not actually been abolished. Additionally, the letter appointing petitioner to the SAM-1 position says nothing about the abolition of petitioner's former position.

Respondent's regulations state that employees affected by a "reduction in force" because of "lack of work, lack of adequate funding, change in mission, or reorganization of the work force," which would seem to include abolishment of a position for administrative efficiency, "must be issued written notice . . . no less than 15 calendar days prior to the effective date." Civ Serv R 2.01(3)(B)(5) and (4)(M). Lopez testified that when a position is abolished, the employee in that position generally is laid off or goes through the employment preference process, both of which trigger a written notice that the position is abolished. Lopez explained, however, it is not normal procedure to send notices to employees who accept alternate placements, as petitioner did. Petitioner testified that he received a phone call from his supervisor that his position was abolished and that he accepted the level 15 position.

These facts establish that there was competent and substantial evidence for respondent to conclude that petitioner had received oral notice that his position was being abolished from his supervisor, that petitioner eventually made contact or was contacted by Lopez regarding an alternate placement, and that by accepting an alternate placement that could not be achieved as part of the employment preference or bumping process, petitioner took himself out of a process that would have resulted in his receiving a written notice.

As for the reason petitioner's position was targeted, the hearing officer accepted the testimony of McKeon that needed budget cuts necessitated that some positions be abolished and that he specifically identified petitioner's position because he determined it was administratively unnecessary. The hearing officer concluded that Straub and others led petitioner to believe he was being scapegoated to "ease the sting" of the loss of his position. The ERB concluded that

the hearing officer did not err in relying on McKeon's testimony over that of the other DOC officials.

The circuit court did not definitively address whether it believed the finding of respondent that the position was abolished for reasons of administrative efficiency was supported by competent, material, and substantial evidence because it had concluded that the position was not actually abolished.

Although there was evidence adduced to support petitioner's contention that he was made the scapegoat for the problematic pharmaceutical audit, there was also evidence presented that petitioner's position was abolished due to large budgetary shortfalls and the ensuing conclusion that the operations of the DOC would not be impacted by its elimination. Respondent, through the decisions of the hearing officer, the ERB, and ultimately its Commissioners, chose to credit the evidence showing that the position was abolished for administrative efficiency.

We must conclude that the circuit court erred in invading the fact-finding province of respondent and grossly misapplied the substantial evidence test in substituting its own interpretation of the evidence for the reasonable interpretation chosen by respondent. *Goolsby*, 211 Mich App at 219.

## C. COSTS AND ATTORNEY FEES

"Generally, attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, or common-law exception, or where provided by contract of the parties." *Grace v Grace*, 253 Mich App 357, 370-371; 655 NW2d 595 (2002). Exceptions to this general rule must be narrowly construed. *Brooks v Rose*, 191 Mich App 565, 575; 478 NW2d 731 (1991).

Initially, the circuit court justified its award of attorney fees and costs under MCR 2.625. MCR 2.625 provides that under certain circumstances, costs are to be awarded to the prevailing party in "an action" and provides rules for determining who the prevailing party is, as well the procedure for taxing costs and billing costs. But MCR 2.625 says nothing about attorney fees. Furthermore, MCR 2.625 is located in Chapter 2 of the Michigan Rules of Court. MCR 2.001 provides that the rules in Chapter 2 "govern procedure in all civil proceedings in all courts . . . ." This action is not a civil action. It is an appeal to the circuit court of a decision made by administrative agency; therefore, it is governed by Chapter 7. MCR 7.101(A).

The circuit court appeared to recognize this error by later stating that attorney fees should be awarded under MCR 7.115. In appellate proceedings before the circuit court, MCR 7.115 does entitle the prevailing party to costs, but it says nothing about attorney fees. In any event, petitioner is no longer the prevailing party.[1] We, therefore, reverse the decision of the circuit court awarding petitioner costs and attorney fees.

---

[1] MCL 600.2591 states that "[u]pon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the

We reverse and vacate the circuit court's opinion and order of March 2, 2015, and its subsequent order of June 8, 2015.  We do not retain jurisdiction.  As the prevailing party, respondent may tax its costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ Mark T. Boonstra

---

prevailing party the costs and fees incurred by that party in connection with the civil action." However, petitioner did not file a motion claiming that respondent's case was frivolous. Additionally, the statute defines "prevailing party" as "a party who wins on the entire record." MCL 600.2591(3)(b).  Because petitioner should not have been the party to win on the entire record, he should not be considered the prevailing party and should not be awarded attorney fees under MCL 600.2591.